Kent R. Robison, Esq. (SBN 1167)
krobison@rbsllaw.com
Frank C. Gilmore, Esq. (SBN 1 0052)
fgilmore@rbsllaw.com
ROBISON, BELAUSTEGUI, SHARP & LOW
71 Washington Street
Reno, Nevada 89503
Telephone: (775) 329-3151

David B. Shemano, Esq. (admitted *pro hac vice*)
DShemano@RobinsKaplan.com
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130

Attorneys for Paul A. Morabito and Consolidated
Nevada Corporation

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CONSOLIDATED NEVADA CORPORATION,<br><br>            Debtor. | Case No. BK-N-13-51236<br><br>Chapter 7<br><br>**OPPOSITION OF DEBTORS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED BY THE HERBST PARTIES**<br><br>Date:    February 8, 2017<br>Time:   2:00 p.m. |

Paul A. Morabito (the "Debtor" or "Morabito") and Consolidated Nevada Corporation ("CNC," and together with the Debtor, the "Debtors"), hereby submit their opposition to the proposed findings of fact and conclusions of law submitted by the Herbsts in connection with the Debtor's motion for authority to file and prosecute certain fraud and fraudulent transfer claims (the "Fraud Claims") on behalf of their bankruptcy estates against the Herbsts (the "Motion").

/ / /

61301577.1

# I.

## THE FINDINGS AND CONCLUSIONS DO
## NOT ACCURATELY REFLECT THE COURT'S RULING

While the discussion and argument at the hearing on the Motion was wide-ranging, the Court made a very narrow ruling at the hearing – the successful prosecution of the Fraud Claims was unlikely to result in an affirmative monetary recovery to the bankruptcy estates. Instead of drafting findings and conclusions that reflect the Court's narrow ruling, the Herbst have taken this opportunity to try and litigate the underlying merits of the Fraud Claims by including (1) findings and conclusions the Court did not make, and (2) findings and conclusions the Court could not make because the hearing was not an evidentiary hearing to adjudicate disputed facts.

The Debtors believe the Court clearly erred in its analysis of whether the Debtors should be permitted to prosecute the Fraud Claims on behalf of the estates and will be filing a motion for reconsideration. If the motion for reconsiderations is denied, the Debtors will be filing a notice of appeal. But regardless of whether the Court erred, the entered findings and conclusions should be accurate. The Debtors have lodged a competing form of findings and conclusions that is accurate. Attached as Exhibit A is a redline showing the changes to the form submitted by the Herbsts. The following is a description of the differences:

Paragraph 7.    Paragraph 7 provides that the April 17 letter "raised issues that the Debtors had with the accounts payable detail . . . specifically with respect to liabilities and assets that Debtors contended should have been associated with Nella Oil/Western Energetix." The finding is intended to create the impression that the April 17 letter was very general and addressed all aspects of the BHI/WE relationship. That is not true and the Court found to the contrary. The April 17 letter very specifically requested that the Independent Accountant verify whether or not the Herbst working capital report erroneously included liabilities owed by WE to third parties. The April 17 letter had nothing to do with any other aspect of the BHI/WE relationship, including whether the Herbst working capital report omitted receivables owed by WE to BHI, which is the basis of the Fraud Claims. The Debtors' version is correct and the Herbst version is incorrect.

1    Paragraph 16. Paragraph 16 provides that an excerpt of the Expert Report "further

2    substantiates that the WE transaction with BHI was fully explored and investigated." A review of

3    the hearing transcript reveals that the Court never made any reference, let alone a finding,

4    regarding the Expert Report. Further, the Expert Report does not in any way "substantiate" that

5    whether or not the Herbsts fraudulently omitted several million dollars of receivables from the

6    working capital report was "fully explored and investigated." The Debtors' version is correct and

7    the Herbst version is incorrect.

8    Paragraph 18. Paragraph 18 tendentiously summarizes the vacated State Court findings

9    and conclusions. To the extent the Court intends to make a finding regarding the contents of the

10   vacated State Court findings and conclusions, it should do so accurately. A finding that the

11   Debtors defrauded the Herbsts in "three (3) specific ways" is not true. The State Court found

12   (albeit erroneously, if not irrationally), that the Debtors made statements with respect to two

13   issues that fraudulently induced the Herbsts to close and caused them damages.[1] But the State

14   Court also found that other alleged fraudulent statements were not fraudulent, including

15   representations regarding the value of BHI. The Debtors' version accurately summarizes the

16   State Court findings and conclusions.

17   Paragraphs 19-20. Paragraphs 19 and 20, which repeat provisions of the State Court

18   findings and conclusions, are entirely unnecessary. The State Court findings and conclusions

19   speak for themselves, and this Court certainly did not read into the record as part of its ruling a

20   selective couple dozen provisions of the State Court findings and conclusions.

21   Paragraph 35. Paragraph 35 provides that the "time to appeal the Confessed Judgment has

22

23   _____

[1] The State Court found that statements were fraudulent with respect to the working capital
24   estimate, even though the working capital estimate was an estimate subject to a true-up and the
     Herbsts were required to close regardless of the estimate. That finding was a deduction based
25   upon Morabito's inability to explain the difference between Morabito's estimate of the accounts
     payable as of the closing date and the amount found by the Independent Accountants. The State
26   Court also found that statements were fraudulent with respect to Morabito's intent to perform the
     role of construction manager, even though the provision was insisted upon by Morabito because
27   he was only entitled to payment regarding the development sites when they were completed, so
     he wanted some measure of control to ensure that the sites were developed as planned.
28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

expired." The Court did not make any such finding. The determination of various procedural deadlines regarding any attack on the Confessed Judgment should be decided by the State Court in the appropriate context and not this Court in the context of this Motion.

Paragraph 39. Paragraph 39 provides that "Morabito acknowledges that he knew of the basis of the fraud claims . . . prior to the continued 341 meeting." The Court made no such finding and the finding is false. The 341(a) transcript reflects that Morabito was unwilling to testify at the 341(a) meeting regarding the fraud claims because the facts were still being developed, and Morabito testified, unrebutted, that he was unaware of the claims until December 2016.

Paragraph 41. Paragraph 41 provides, or at least strongly implies, that Morabito knew the Herbsts committed fraud regarding the omission of receivables during the State Court Action, raised the issue with the Independent Accountant, appealed the Working Capital Order on that basis, and did not raise the known issue in the pending nondischargeability proceeding. The finding is completely false and the Court never made such a finding. Morabito testified, unrebutted, he did not become aware of the fraud until December 2016.

Paragraph 44. Paragraph 44 provides that the Complaint seeks to attack a judgment that no longer exists. The finding is unnecessary and misleading. The Complaint seeks relief from the Confessed Judgment entered in 2013, which was not vacated. The Complaint also seeks relief based upon fraud on the court with respect to the vacated State Court Judgment, which the State Court can grant. *Ericsson Inc. v. InterDigital Communs. Corp.*, 418 F.3d 1217 (Fed. Cir. 2005) (while denying permissive intervention by a non-party to reopen a vacated judgment, recognizing that a party can seek to reopen a vacated judgment to grant appropriate relief under Rule 60).

Paragraph 46. Paragraph 46 provides that the Debtors allege that the Herbsts committed fraud by including assets and liabilities of WE on BHI's financial statements and working capital estimate. This is false and the Court explicitly found to the contrary. The Herbst fraud was omitting from the financial statement and working capital report millions of dollars of receivables owed by WE to BHI, and has nothing to do with the erroneous inclusion of WE liabilities owed to

third parties on the BHI financial statements.

Paragraph 47. Paragraph 47 contains an acknowledgment that the Court distinguished the issues relating to the sale of certain assets to WE, which were investigated during the State Court Action, from the receivables owed by WE to BHI, which was not investigated, but the proposed language is intentionally so vague and ambiguous as to be almost meaningless. The Debtors' version is correct and reflects the Court's ruling.

Paragraphs 48-53. Paragraphs 48 through 53 include findings relating to the Court's difficulty in believing that Morabito did not discover the Herbst fraud until 2016. While the Court expressed its difficulties on the record, the Court did not basis its ruling on those difficulties, and any ruling based on the difficulties would be clear error – whether or not Morabito should have discovered the fraud at the time, and whether not the Herbsts' fraud should be excused if Morabito should have discovered the fraud at the time, is a substantive issue to be decided by the State Court. For this reason, there is no reason to include a reference to the difficulties in the findings. But if the Court is going to reference its difficulties in the findings, the findings should be clear and accurate. In addition, the Court should acknowledge that, for purposes of the Motion, the Court accepted as true the allegation that fraud was committed and that Morabito's declaration under penalty of perjury that he did not discover the fraud until 2016 is currently unrebutted by any contrary evidence. The Debtors' version is correct and reflects the Court's ruling.

Paragraph 55. Paragraph 55 provides that the Debtors admit that "the causes of action set forth in the Complaint are property of the Debtors' estates." That is not entirely correct. The Debtors admitted that the causes of action to recover monetary damages (and for fraudulent transfer) are property of the estate. The Debtors specifically stated they had independent standing to assert fraud on the court. Whether or not the Debtors have independent standing with respect to any specific cause of action is not before the Court and the Court made no rulings. The Debtors' version is correct.

Paragraph 68. Paragraph 68 provides that even if the Debtors had made a demand on the

1   Trustee, the Trustee's refusal would not have been abuse of discretion. To the extent the Court

2   made this finding, which is unclear, it should not be included because it is unnecessary *dicta*.

3   Furthermore, the Trustee has admitted to doing no independent investigation. In fact, after the

4   hearing, the Trustee sent a letter to the Debtors requesting accounting information so he can

5   investigate the claims. The Court should limit the findings and conclusions to the Trustee's

6   representation that he would not prosecute the claims, even if meritorious, because of lack of

7   funds.

8       <u>Paragraphs 72-74</u>. Paragraphs 72 through 74 describe the elements of the key causes of

9   action that the Debtors intend to prosecute against the Herbsts. The Herbst description omits

10  certain key cases and legal principles. The Herbst language omits:

11      • The colorable standard is whether the claim could survive a motion to dismiss.

12        *Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy, LLC)*, 527

13        B.R. 169, 173 (D. Del. 2015).

14      • For purposes of NRCP 60(b)(3), the fraud need not be intentional; unintentional

15        misconduct will suffice. *Anderson v. Cryovac, Inc.,* 862 F.2d 910 (1st Cir. 1988).

16        A confession of judgment obtained by fraud is remediable under NRCP 60(b)(3).

17        *Coast to Coast Demolition & Crushing, Inc. v. Real Equity Pursuit, LLC*, 126

18        Nev. 97, 103-05 (Nev. 2010).

19      • In order to obtain relief based upon fraud on the court or pursuant to NRCP

20        60(b)(3), it is unnecessary for the party to allege and establish that the fraud or

21        misrepresentation altered the outcome of the trial. *Lonsdorf v. Seefeldt*, 47 F.3d

22        893, 897 (7th Cir. 1995).

23      • If the claimant establishes entitlement to relief based upon fraud on the court or

24        under Rule 60(b)(2) or (3), the underlying judgment is vacated and the case stands

25        as if the judgment had never occurred in the first place. *Ditto v. McCurdy*, 510

26        F.3d 1070, 1077 (9th Cir. 2007); *Maguire v. MTC Fin., Inc.*, 2013 Nev. Unpub.

27        LEXIS 960 (Nev. 2013). The case remains open and the court has the power to

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   enter a new judgment as appropriate under the applicable substantive law. *Ditto*

2   *v. McCurdy*, 510 F.3d at 1077.  A party that paid funds pursuant to a vacated

3   judgment is entitled to restitution of all transfers of property pursuant to the

4   vacated judgment. *Levy v. Drew*, 4 Cal. 2d 456 (Cal. 1935).

5   The Debtors' version accurately states the applicable law.

6       Paragraphs 76-79.  Paragraphs 76-79 contain a tendentious characterization of specific

7   allegations in the Complaint.  The characterization is unnecessary, especially because the

8   Complaint had to be filed prematurely prior to the expiration of the extended statute of

9   limitations.  The heart of the allegation of fraud – the deliberate omission of several million

10  dollars of receivables from the working capital report – is more than sufficiently described in the

11  Motion.

12      Paragraph 84.  Paragraph 84 provides that the Court "finds it implausible that Morabito

13  could not have discovered [the fraud] through reasonable diligence."  The Court made no such

14  finding, not could it at the hearing.  The Court certainly expressed its "difficulties" with the

15  notion that it never occurred to Morabito or his attorneys during the State Court Action to verify

16  whether the Herbsts had fraudulently omitted receivables from the working capital report, but the

17  Court never made an ultimate finding regarding whether the Debtors should have discovered the

18  fraud at the time. The Court did not conduct an evidentiary hearing to adjudicate disputed facts,

19  and whether or not the Debtors should have discovered the fraud is a question for the State Court

20  and not the Bankruptcy Court.

21      Paragraphs 85-86.  Paragraphs 85-86 are a tendentious description of the State Court

22  findings and conclusions.  The Debtors' version is neutral and accurately contains the Court's

23  ultimate conclusion, which is that even if the State Court found that the Herbsts had committed

24  fraud regarding the working capital report, it is plausible that the State Court might still find that

25  judgment should be awarded in favor the Herbsts in the amount of $20 million based upon the

26  CMA issue.

27      Paragraphs 88-89.  Paragraphs 88-89 contain statements that are both false and irrelevant

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   regarding the ability of the Debtors to prosecute the claims.  While the Court speculated on the

2   ability of Morabito or Bayuk to finance the litigation, the Court's speculation was not part of its

3   ruling and could not be part of the ruling, because the hearing was not an evidentiary hearing to

4   adjudicate disputed facts and the issue is irrelevant.

5       Paragraph 92.  Paragraph 92 provides that the "Debtors presented the Court with no

6   evidence in support of the Motion."  That is false.  Morabito submitted a declaration under

7   penalty of perjury describing, in great detail, his recent discovery of the fraud and the details of

8   the fraud.

9       Paragraph 94-95.  Paragraph 94 provides that the "Morabito Declaration is clearly hearsay

10  and full of legal argument."  That is false.  The Morabito Declaration is clear that Morabito

11  personally investigated the underlying documentation and discovered the fraud, and testified

12  based upon his personal knowledge.  Paragraph 95, apparently referring to statements by Dwelle

13  and Breeze, provides that those statements are inadmissible hearsay.  While the Court made that

14  suggestion, the Court was incorrect.  The statements, which Morabito relayed, were not submitted

15  for their truth, but to explain why Morabito was prompted to investigate in December 2016

16  whether the Herbsts committed fraud.  Furthermore, in considering whether a claim is colorable,

17  or even whether a claim can survive summary judgment, a court can consider hearsay as long as

18  the hearsay testimony can be submitted in an admissible form at trial.  *Fraser v. Goodale*, 342

19  F.3d 1032, 1037 (9th Cir. 2003).

20      Paragraph 96.  Paragraph 96 provides that the "absence of an affidavit from Mr. Dwelle or

21  Mr. Allen Breeze is also concerning."  As the hearing was not an evidentiary hearing to

22  adjudicate disputed facts, it is unclear why the Court would be concerned that the Debtors did not

23  submit declarations from Dwelle and Breeze as opposed to having Morabito testify, under penalty

24  of perjury, what they told him.  In any event, in connection with their motion for reconsideration,

25  the Debtors will be submitting a declaration from Dwelle.

26      Paragraph 97.  Paragraph 97 provides that "Morabito's lack of credibility runs through the

27  Chapter 7 Case as it did in the State Court Action."  The conclusion, to the extent the Court

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   actually made the conclusion, is irrelevant, because it begs the question. Morabito's purported

2   lack of credibility is based upon vacated findings made by the State Court in 2011, but Morabito

3   is now alleging that the vacated findings resulted from the Herbst fraud. To rule that Morabito's

4   allegation that the State Court finding that Morabito committed fraud was itself fraudulently

5   obtained is not credible because the State Court found that Morabito committed fraud would read

6   Rule 60(b)(3) and the fraud on the court doctrine out of existence.

7       Paragraph 98. Paragraph 98 is the Herbst characterization of the Court's ultimate

8   conclusion – that the Debtors did not provide a "sufficient evidentiary basis for the Court to be

9   persuaded that there is a plausible and colorable claim for relief in the Complaint." The

10  characterization is so vague as to be meaningless, and fails to accurately characterize what the

11  Court ultimately concluded – that even assuming the Debtors demonstrated that the Herbsts

12  committed fraud, and even assuming the State Court vacated the Confessed Judgment, the Court

13  speculated that it would be plausible that the State Court would enter a new judgment against the

14  Debtors in the amount of $20 million. And if the State Court did enter a new judgment in the

15  amount of $20 million, there would be no "benefit to the estate" because there would be no

16  affirmative monetary recovery. The Court made the conclusion that there would be no benefit to

17  the estate even though, under its own scenario, the Herbst claim would be reduced by over $60

18  million. The Debtors submit that the Court's conclusion based upon its subjective speculations

19  about what the State Court would ultimate do after finding that the Herbsts committed fraud is

20  clearly erroneous without any support under any case law or principle. But regardless, the

21  Court's findings and conclusions should accurately reflect the Court's conclusion. The Debtors'

22  version is accurate.

23      Paragraph 103. In describing the law governing abandonment, the Herbsts discuss section

24  554(c) of the Bankruptcy Code, but the applicable section is 554(b), and unscheduled but

25  identified property of the estate can be abandoned pursuant to section 554(b). *Seymour v. Bank of

26  Am., N.A. (In re Seymour)*, 2013 Bankr. LEXIS 4656 *19 (BAP 9th Cir. Apr. 23, 2013) ("unless

27  and until a chapter 7 trustee abandons them, a debtor's unscheduled claims continue to be

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  property of the estate"), *aff'd, Seymour v. Bank of Am. (In re Seymour)*, 601 Fed. Appx. 572 (9th

2  Cir. 2015). The Debtors' version is correct.

3      <u>Paragraph 105</u>. The Court denied abandonment notwithstanding the Trustee represented

4  he will not administer the claims and the Court concluded that prosecution of the claims will not

5  benefit the estate. The Debtors submit denying abandonment in this circumstance is an abuse of

6  discretion. Regardless, the language should reflect the Court's ruling. The Debtors' version is

7  correct.

8

9  DATED: March 9, 2017                    ROBISON, BELAUSTEGUI, SHARP & LOW
                                           71 Washington Street
10                                         Reno, Nevada 89503
                                           Telephone: (775) 329-3151
11
                                               and
12
                                           ROBINS KAPLAN LLP
13                                         2049 Century Park East, Suite 3400
                                           Los Angeles, CA  90067
14                                         Telephone:  (310) 55200130

15                                         By:   /s/ Frank C. Gilmore
                                               Kent R. Robison, Esq. (SBN 1167)
16                                             Frank C. Gilmore, Esq. (SBN 10052)
                                               David B. Shemano, Esq. (admitted *pro hac*
17                                             *vice*)

18                                         Attorneys for Paul A. Morabito and Consolidated
                                           Nevada Corporation

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

61301577.1

# EXHIBIT A

# EXHIBIT A

1

2

3

4

5

6

7

8  ~~GARMAN TURNER GORDON LLP~~
~~GERALD M. GORDON, ESQ.~~
~~Nevada Bar No. 229~~

9  ~~E-mail: ggordon@gtg.legal~~
~~MARK M. WEISENMILLER, ESQ.~~

10  ~~Nevada Bar No. 12128~~
~~E-mail: mweisenmiller@gtg.legal~~

11  ~~650 White Drive, Ste. 100~~
~~Las Vegas, Nevada 89119~~

12  ~~Telephone 725-777-3000~~
~~Facsimile 725-777-3112~~

13  ~~*Attorneys for the Herbst Parties*~~

14              **UNITED STATES BANKRUPTCY COURT**
                    **FOR THE DISTRICT OF NEVADA**

15

16  In re:                                    Case No.: BK-S-13-51236-GWZ
                                              Chapter:  7
17  CONSOLIDATED NEVADA
    CORPORATION,                              Hearing:
18                                            Date: February 8, 2017
            Debtor.                           Time: 2:00 p.m.

19

20  **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER**
    **DENYING MOTION FOR AUTHORITY TO FILE AND PROSECUTE CLAIMS ON**
21  **BEHALF OF BANKRUPTCY ESTATE OR, IN THE ALTERNATIVE,**
    **TO COMPEL ABANDONMENT OF CLAIMS**

22          This matter having come on for hearing before the above-captioned Court on February 8,

23  2017, at 2:00 p.m. (the "Hearing"), pertaining to the *Motion for Authority to File and Prosecute*

24  *Claims on Behalf of Bankruptcy Estate or, in the Alternative, to Compel Abandonment of Claims*

25  [ECF No. 131] (the "Motion"), filed by the debtor, Consolidated Nevada Corporation ("CNC"),

26  on December 27, 2016.  The Court having read and considered the Motion and the *Declaration*

27  *of Paul A. Morabito in Support of Motion for Authority to File and Prosecute Claims on Behalf*

28

~~4846-3779-9747, v. 2~~

1   *of Bankruptcy Estate or, in the Alternative, to Compel Abandonment of Claims* [ECF No. 132]

2   (the "Morabito Declaration") and all papers and exhibits filed in support thereof; having read

3   and considered the oppositions filed by the chapter 7 trustee, William A. Leonard (the

4   "Trustee"), and JH, Inc. ("JH"), Jerry Herbst ("Herbst"), and Berry-Hinckley Industries ("BHI"

5   and collectively with JH and Herbst, the "Herbst Parties") [ECF Nos. 136 and 137, respectively]

6   and all papers and exhibits filed in support thereof [ECF Nos. 138-139]; having read and

7   considered CNC's reply [ECF No. 140] and all papers and exhibits filed in support thereof; and

8   having read and considered all relevant papers and exhibits on file in the above-captioned

9   Chapter 7 case (the "Chapter 7 Case") and the related proceedings; the Court hereby enters, in

10   accordance with FRCP[1] 52, applicable in the Chapter 7 Case pursuant to Bankruptcy Rule 9014,

11   the following facts and conclusions of law:

12       **IT IS HEREBY FOUND AND DETERMINED** by the Court as follows:

13       1.     The Court has jurisdiction of the matters raised in the Motion as core proceedings

14   pursuant to 28 U.S.C. §§ 157 and 1334.

15       2.     Determining whether to grant the Motion is a core proceeding in which the Court

16   may enter a final judgment in accordance with 28 U.S.C. § 157(b)(1) and (b)(2)(A), (C), (H),

17   (M), and (O).

18       3.     Venue of the Chapter 7 Case in this District is proper pursuant to 28 U.S.C. §§

19   1408 and 1409.

20       4.     Good, sufficient, and timely notice of the Motion and Hearing has been given to

21   those to whom notice is required to be given in accordance with the United States Constitution,

22   the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Notice of all proceedings

23   regarding or relating to the Motion and Hearing was adequate under the circumstances and

24   materially complied with applicable provisions of the United States Constitution, the Bankruptcy

25   Code, the Bankruptcy Rules, and the Local Rules.

26

27   [1] All references to "Chapter" or "Section" herein shall be to the Bankruptcy Code appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; all references to "FRCP" shall refer to the Federal Rules of Civil Procedure; and all references to "Local Rule" are to

28   the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada.

1    ...

2                              **FINDINGS OF FACT**

3    **A.    The Dispute, the Trial, and the State Court Judgment.**

4         5.    JH and P.A. MORABITO & CO. Ltd. ("PAMCO"), the predecessor-in-interest to

5    CNC, entered into an *Amended and Restated Stock Purchase Agreement* dated June 28, 2007

6    (the "ARSPA"), whereby JH was to purchase the stock of BHI from PAMCO.  Herbst was the

7    guarantor of the JH obligations under the ARSPA, and Paul A. Morabito ("Morabito," and

8    together with CNC, the "Debtors") guaranteed the obligations of PAMCO.

9         6.    A dispute developed between Debtors and the Herbst Parties regarding the sale of

10   the BHI stock to JH.  Debtors filed a lawsuit against the Herbst Parties on December 3, 2007,

11   captioned *Consolidated Nevada Corp., et al. v. JH. et al.*, in Department 6 of the Second Judicial

12   District Court in and for the County of Washoe (the "State Court"), Case No. CV07-02764

13   (together with all claims and counterclaims, the "State Court Action").  The Herbst Parties filed

14   numerous counterclaims in the State Court Action against Debtors, including, but not limited to,

15   fraud in the inducement, misrepresentation, and breach of contract.

16        7.    On April 17, 2009, Debtors' counsel in the State Court Action, Leif Reid,

17   transmitted a letter to the Independent Accountant (the "IA") appointed by the State Court,

18   which ~~raised issues~~requested that ~~Debtors had with the accounts payable detail~~the IA verify that

19   all liabilities that the Herbst Parties' included in their working capital report as of July 2, 2007,

20   ~~specifically with respect to liabilities and assets that Debtors contended should have been~~

21   ~~associated with~~were properly included, with a focus on whether the working capital report

22   erroneously included liabilities owed by Nella Oil/Western Energetix ("WE"), not BHI (the

23   "April 17 Letter").

24        8.    The April 17 Letter requested that the IA speak with the owner of WE, Walter

25   Dwelle, and ~~stated~~provided that Mr. Dwelle would provide an affidavit supporting Debtors'

26   claim.

27        9.    The IA asked that Debtors provide him with the specific accounts, vendors,

28   transactions or any other detail relating to Debtors' allegations that certain of BHI's reported

1   liabilities were the financial obligation of an entity other than BHI so that the IA could consider

2   and investigate Debtors' claims through the review process.

3       10.     On April 21, 2009, the IA spoke with Mr. Dwelle by telephone regarding

4   Debtors' allegations in the April 17 Letter.   However, Mr. Dwelle suggested that no WE

5   ~~accounts payable~~liabilities or other transactions should be in the BHI financials as of July 2007

6   because the sale closed in January 2007 and any commingling of the companies' activities would

7   have ceased well before July 2007.

8       11.     On April 23, 2009, Shepard Mullin, counsel to the IA, responded to the April 17

9   Letter, addressing each point raised in the April 17 Letter, including the assertions regarding WE

10  (the "April 23 Response").

11      12.     Debtors often promised to provide an affidavit or other testimony from Mr.

12  Dwelle to support their allegations that the Herbst working capital calculation included liabilities

13  owed by WE, but never did.

14      13.     On June 18, 2009, the IA submitted to the State Court the final working capital

15  report and on August 12, 2009, the State Court entered a working capital order (the "Working

16  Capital Order") approving and adopting the working capital report.

17      14.     On August 19, 2009, the Debtors appealed the Working Capital Order to the

18  Nevada Supreme Court.   On November 17, 2011, the appeal was dismissed.

19      15.     On or about March 26, 2010, Jones Vargas, counsel for the Herbst Parties, filed

20  with the State Court the *[Second] Amended Expert Report of Craig l. Greene, CPA/CFF, CFE,*

21  *MCJ* (the "Expert Report").

22      16.     One excerpt of the Expert Report (pages 20 and 21) ~~further substantiates~~

23  ~~that~~references the WE transaction with BHI ~~was fully explored and investigated.   A second~~

24  ~~excerpt from the Expert Report (pages 81 and 82) illustrates that the WE transaction actually~~

25  ~~harmed BHI because of the losses inherent in the undisclosed agreement regarding the cost of~~

26  ~~fuel.   Finally, another excerpt from the Expert Report (Exhibit 16) evidences the third~~

27  ~~component of damages, $66,002,205.75, awarded by the State Court in the Judgment as more~~

28  ~~particularly described below~~.

17.    The State Court Action was tried before the Honorable Judge Brent Adams by way of a bench trial commencing May 10, 2010 and lasted several weeks.

18.    On October 12, 2010, the State Court entered findings of fact and conclusions of law (the "FF&CL") in the State Court Action, which specifically set forth the legal and factual basis for judgment against Morabito for fraud in the inducement. The State Court concluded that Debtors defrauded the Herbst Parties in three (3) specific ways and awarded damages for two components, which totaled $85,871,363.75. found that there was not sufficient evidence to warrant a finding of fraud or to award damages with respect to the representations of value of BHI. The State Court cited the testimony of Paula Meyer, BHI's CFO, that she was unaware of any particular instance when Morabito gave inaccurate information to a third party, or any particular instance in which Morabito changed a financial statement. However, the State Court found that Morabito falsely represented he intended to perform the services of construction manager, that he made those representations to induce the Herbst Parties to purchase certain development sites, the Herbst Parties relied upon those representations, and the Herbst Parties were damaged in the amount of $19,869,159. The State Court also concluded that the working capital estimate prepared by Morabito prior to the closing included false representations regarding the amount of accounts payable and the Herbst Parties would not have purchased BHI if they were aware of the false representations in the working capital estimate, and the Herbst Parties were damaged in the additional amount of $66,002,205.75.

19.    As to the Herbst Parties' fraud allegations with respect to Morabito's representations regarding construction management services in the *Construction Management Agreement* (the "CMA"), the State Court concluded that in the FF&CL:

2. Fraud in the Inducement

69. The Court finds by clear and convincing evidence that Mr. Morabito never for a single second had any intention to perform the services of construction manager.

70. Mr. Morabito's representations under the CMA were intentionally false.

...

73. As a result, [the Herbst Parties] have been damaged in the sum of $19,869,159.

20.    With respect to the Herbst Parties' losses due to Morabito's fraud as a result purchasing BHI, including consideration of BHI's monthly losses, accounts payable, and the working capital estimate, the State Court concluded in the FF&CL:

34. Clear and convincing evidence shows that there was no basis whatsoever for the contents of the working capital estimate other than Mr. Morabito's decision to create it.

35. There is not one piece of paper that has been produced in over 5,500 exhibits in this trial, to the Independent Accountants, during discovery or anywhere else, to support the exaggerated value of the company as set forth in the working capital estimate.

36. The major difference between Mr. Morabito's estimate and the actual working capital is accounts payable. This fact is significant.

37. The Court is very impressed with the testimony of Paula Meyer. Ms. Meyer worked for BHI since approximately 1995. She worked for years under the direction of Mr. Hinckley, who impressed the Court as an honest and fine business person. Ms. Meyer is also a CPA and was the CFO of BHI. Ms. Meyer graduated from the University of Nevada, Reno and was an accountant at Grant, Thornton.

. . .

43. In the course of events leading to the closing of this transaction, there was a point where Mr. Morabito wanted Ms. Meyer to communicate only with him and not the lawyers or BCC. This is a small fact, but it is an unusual fact. This is a complex transaction involving tens of millions of dollars. As the CFO, Ms. Meyer had access to the financial statements of the company while the CEO of the company, Mr. Morabito, did not have such access. Nevertheless, Mr. Morabito instructed Ms. Meyer to only communicate with him. Thus, the buyer was deprived of access to Ms. Meyer (who knew the true financial condition of the company) and had to rely exclusively on the false working capital estimate prepared by Mr. Morabito.

44. Ms. Meyer testified that she did not know what happened to information once it went to Mr. Morabito. Mr. Morabito handled the majority of the information.

45. Ms. Meyer's testimony regarding her constant disputes and disagreements with Paul Morabito about the accounts payable was very moving.

46. It is not enough to say Ms. Meyer constantly had disagreements with Mr. Morabito about the amount of accounts payable. Ms. Meyer's anxiety and fear of this man because of his relentless, torturous attacks on her to drive down the accounts payable was almost palpable as she testified. Her testimony sounded more like the accounts the Court hears in cases of spousal abuse than in cases of commercial transactions.

47. Ms. Meyer was then shown the document prepared by Mr. Morabito and she knew in the flicker of an eye that it was way off.

48. Ms. Meyer testified that monthly accounts payable should have been in the range of at least five to six million. Ms. Meyer had no idea why Mr. Morabito made the representation he did.

49. Mr. Morabito always thought accounts payable should be lower. It was always a battle back and forth between Mr. Morabito and Ms. Meyer.

50. Mr. Stanton Bernstein, Mr. Morabito's personal accountant, agreed with Ms. Meyer regarding accounts payable.

51. Ms. Karen Scarborough, the BHI controller, also agreed with Ms. Meyer.

53.  On or about March 8, 2007, the accounts payable totaled $7,405,342.33.

. . .

55. Ms. Meyer told Mr. Morabito on the telephone many times that she knew the payables were way too low.

. . .

59. The working capital estimate Mr. Morabito gave the buyer had no basis in reality. It was contrary to what he knew firsthand to be the truth.

. . .

93. Clear and convincing evidence shows that there was no basis whatsoever for the contents of the working capital estimate other than Mr. Morabito's decision to create it.  [The Herbst Parties] proved, by clear and convincing evidence, that Mr. Morabito's statements of working capital were false and known by him to be false, that [the Herbst Parties] reasonably relied on Mr. Morabito's statements of working capital, and were damaged thereby.

94. Generally speaking, an estimate of value cannot be the basis for a legal claim for fraud or other misconduct. However, the circumstances in this case are different.

    a.    First, the estimate was prepared by Mr. Morabito, the owner of the company.

    b.    Second, the estimate was significantly and materially inconsistent with the information he was given firsthand by his chief financial officer and by his personal accountant.

    c.    Third, there is no evidence that anyone else reviewed the estimate that was prepared by Mr. Morabito.

95. There is simply no other conclusion available than the working capital report that was prepared by Mr. Morabito was intentionally false, was done for the

purpose of [the Herbst Parties] relying on it, and that [the Herbst Parties] did reasonably rely on it.

96. There is no data in the company to support the working capital estimate.

97. Mr. Morabito knew firsthand from his own employees and from his own accountant that it was incorrect.

98. The working capital estimate was materially inflated and falsely inflated the value of the company, and that became apparent shortly after close of the transaction.

...

103. In December of 2006, [the Herbst Parties] were told BHI was losing about $600,000 a year. [Debtors'] own analysis indicated the company was losing approximately $1.5 million a year. In relatively short order, it turns out the company was losing approximately $1 million a month. Thus, it is reasonable, as Mr. Greene suggested, to extrapolate from performance to the truthfulness or untruthfulness of the representations concerning the value of BHI.

104. This evidence is not sufficient to warrant a finding of fraud or to award damages with respect to the representations of the value of BHI.

105. However, these facts demonstrate that had Defendants known the truth about the working capital, they would not have bought the company.

106. The Court, having found that defendants were fraudulently induced, awards damages to [the Herbst Parties] and against [the Morabito Parties] in the amount of $66,002,205.75.

19.    21. Based upon the FF&CL, the State Court awarded total compensatory damages to the Herbst Parties in the amount of $85,871,364.75 for fraud in the inducement.

20.    22. After discovery regarding punitive damages, the State Court entered a judgment awarding the Herbst Parties total damages in the amount of $149,444,777.80, representing both compensatory and punitive damages (the "State Court Judgment") on August 23, 2011.

21.    23. After entry of the State Court Judgment, Debtors filed numerous appeals with the Nevada Supreme Court, denominated as Supreme Court Case Nos. 57943, 57944, 59138, and 54412. The Herbst Parties also filed numerous cross-appeals (together with the appeals filed by Morabito, the "Appeals").

**B.    Settlement Agreement, Default, and Confessed Judgment.**

4846-3779-9747, v. 2

22.    ~~24.~~ The Herbst Parties and Debtors, with the advice of counsel, agreed to settle the State Court Action and the Appeals and, on November 30, 2011, executed the *Settlement Agreement and Mutual Release* (the "Settlement Agreement").

23.    ~~25.~~ Pursuant to the Settlement Agreement and subsequent to its execution, the Appeals were vacated, as were the State Court Judgment and the FF&CL.

24.    ~~26.~~ As part of the Settlement Agreement, Morabito agreed to (i) make several cash payments to the Herbst Parties, (ii) assume certain obligations of the Herbst Parties, (iii) indemnify, defend, and hold harmless the Herbst Parties for certain claims in certain actions, and (iv) list for sale certain real property for the benefit of the Herbst Parties, all of which totaled an obligation of approximately $20 million.

25.    ~~27.~~ As part of the Settlement Agreement, Morabito also agreed to execute (i) a confession of judgment for $85,000,000 (the "Confession of Judgment") which included a recitation of the statement of facts and conclusions of law from the FF&CL that were subsequently vacated by stipulation.

26.    ~~28.~~ Debtors defaulted under the terms of the Settlement Agreement as a result of their failure to timely comply with the terms of the Settlement Agreement, including their failure to pay to the Herbst Parties the cash payment of $4,000,000 due on or before March 1, 2013 (the "Continuing Defaults").

27.    ~~29.~~ Debtors thereafter requested that the Herbst Parties forbear from exercising their rights and remedies under the Settlement Agreement with respect to the Continuing Defaults until December 1, 2013.

28.    ~~30.~~ Accordingly, Debtors and the Herbst Parties, with the advice of counsel, entered into that certain Forbearance Agreement dated March 1, 2013 (the "Forbearance Agreement").

29.    ~~31. However, as~~ As a result of Debtors' breach of the Settlement Agreement and Forbearance Agreement, the Herbst Parties filed with the Clerk of the State Court the Confession of Judgment and the Stipulation of Nondischargeability on June 18, 2013 (the "Confessed Judgment Action").

1         30.    ~~32.~~ The Confessed Judgment was entered onto the judgment roll by the Clerk of

2    the State Court.

3         31.    ~~33.~~ Morabito argued that the entry of the Confessed Judgment was procedurally

4    improper because the State Court Action was closed, so the Herbst Parties were required to

5    obtain a new case number in order ~~for~~to enter the Confessed Judgment ~~to be entered onto the~~

6    ~~judgment roll~~. The State Court ~~in the Confessed Judgment Action~~ held that the filing of the

7    Confessed Judgment was proper and in compliance with the applicable Nevada Revised Statutes.

8    Morabito petitioned for a writ of mandamus, which was denied by the Nevada Supreme Court on

9    procedural grounds.

10        ~~34.    Morabito also petitioned for a writ of mandamus, which was denied by the~~

11   ~~Nevada Supreme Court.~~

12        ~~35.    The time to appeal the Confessed Judgment has expired.~~

13   **C.    The Involuntary Proceedings.**

14        32.    ~~36.~~ On June 20, 2013 (the "Petition Date"), the Herbst Parties filed an involuntary

15   petition for relief under Chapter 7 of the Bankruptcy Code ~~[ECF No. 1]~~ (the "Involuntary

16   Petition") against ~~CNC~~Debtors, thereby commencing a~~the~~ Chapter 7 involuntary proceeding (the

17   "Chapter 7 ~~Case~~Cases").

18        33.    ~~37.~~ On December 22, 2014, the Court entered its *Amended Order for Relief Under*

19   *Chapter 7* ~~[ECF No. 63]~~.7.

20   ...

21   ...

22   **D.    Debtors' Schedules, Statements, and 341 Meetings.**

23        34.    ~~38.~~ Debtors did not list the alleged Claims (defined below) in their schedules or

24   statements, which were amended several times, and did not provide any information to the

25   Trustee at the 341 meetings, including the continued 341 meeting conducted on December 5,

26   2016, just ten-days prior to the filing of the Complaint (defined below).

27        ~~39.    However, Morabito acknowledges that he knew of the basis of the fraud claims~~At

28   the continued 341 meeting, Morabito indicated he had recently become aware of facts that might

1  warrant a claim against the Herbst Parties ~~prior to~~for fraud, but was not willing to discuss the

2  allegations at the continued 341 meeting~~.~~ because the facts were still being developed.

3  **E.    The Nondischargeability Action.**

4        35.   ~~40.~~On March 20, 2015, the Herbst Parties commenced an adversary proceeding

5  (the "Adversary Proceeding") by timely filing their complaint objecting to Morabito's discharge

6  pursuant to Sections 523(a)(2)(A) and 523(a)(2)(B) and 28 U.S.C. § 2201 [ECF No. 1 in

7  15-05019-GWZ] (as amended by ECF No. 8 in 15-05019-GWZ, the "Nondischarge

8  Complaint").

9        ~~41.    Even though Morabito knew of the factual basis of his alleged Claims in 2008-09,~~

10  ~~raised them with the IA, and appealed the Working Capital Order to the Nevada Supreme Court,~~

11  ~~Morabito did not raise them during the Adversary Proceeding or in his opposition to the Herbst~~

12  ~~Parties' *Motion for Partial Summary Judgment* [ECF No. 33 in 15-05019-GWZ].  See ECF Nos.~~

13  ~~7, 10, 42-46, 53, 55, 66, 73, 76 in 15-05019-GWZ.~~

14        36.   ~~42.~~The Herbst Parties were awarded partial summary ~~judgment~~adjudication

15  based upon issue and claim preclusion as a result of the Confessed Judgment on September 22,

16  2016.  See ECF Nos. 59-60 in 15-05019-GWZ.  Morabito filed a motion for revision of the

17  interlocutory partial summary ~~judgment~~adjudication order [ECF No. 66 in 15-05019-GWZ],

18  which is currently under ~~submission~~consideration by the Bankruptcy Court.

19  **F.    The Complaint and Motion.**

20        37.   ~~43.~~On December 16, 2016, Debtors filed the Complaint, which was filed before

21  the State Court, and removed to this Court by the Herbst Parties on December 23, 2016 [ECF

22  No. 733] (the "Complaint").  The Debtors have filed a motion to remand the Complaint back to

23  the State Court [ECF No. 7 in 16-50043-GWZ], which is currently scheduled for hearing on May

24  4, 2017.

25        ~~44.    The Complaint seeks to attack, set aside, and vitiate a judgment that no longer~~

26  ~~exists.  The State Court Judgment was vacated.~~

27        38.   ~~45.~~In the Complaint, Debtors aver causes of action against the Herbst Parties for:

28  (1) Fraud on the Court; (2) NRCP 60(b)(3) – Fraud; (3) Fraudulent Inducement; and (4)

1    Fraudulent Misrepresentation, and seek a declaratory judgment that the Confessed Judgment is

2    unenforceable because it is based upon the State Court Judgment, which was obtained by the

3    Herbst Parties' fraud (collectively, the "Claims").

4       39.    46. More specifically, Debtors allege that the Herbst Parties defrauded the

5    Debtors, the IA, and the State Court because they ~~included assets and liabilities of WE on~~omitted

6    several million dollars of receivables owed by WE to BHI's from the applicable financial

7    statements and ~~their~~working capital ~~estimate~~calculation prepared by the Herbst Parties that were

8    relied upon by the Debtors, IA and State Court during the State Court Action.

9       40.    47. The sale of the predecessor of WE appeared to be a subject that was

10   ~~discussed~~As reflected in the April 2009 correspondence described above, the sale of BHI's

11   non-convenience store assets to WE in January 2007 was analyzed during the State Court Action

12   to ~~ensure~~make sure that the ~~BHI's financials did not contain financial information that should not~~

13   ~~be there because of the WE sale transaction as opposed to how the ongoing business relationship~~

14   ~~between WE and BHI should have been calculated, in other words, for reimbursement or setoff~~

15   ~~purposes, which~~financial statements and working capital calculation prepared by the Herbst

16   Parties did not include liabilities actually owed by WE and not BHI. However, the accounting of

17   ordinary course transactions between WE and BHI that occurred after the sale transaction,

18   including amounts owed by WE to BHI, is entirely distinct and had nothing to do with the ~~sales~~

19   ~~transaction itself~~concern that the Herbst prepared financial statements and working capital

20   calculation incorrectly included WE liabilities.  They are two separate things, and there is no

21   evidence that whether or not millions of dollars owed by WE to BHI was omitted from the

22   financial statements and working capital calculation was investigated by the IA.

23      41.    For purposes of the Motion, the Court accepts as true that (1) the Herbst Parties

24   omitted several millions of dollars of receivables owed by WE from the applicable financial

25   statements and working capital calculation submitted during the State Court Action, and (2)

26   Morabito did not become actually aware of the omission until 2016.

27      42.    48. But it is evident that Debtors' counsel was extraordinarily thorough and

28   ~~diligent.   When you read~~However, the Court finds it had to believe that Morabito did not

1    consider during the State Court Action the possibility that the Herbst Parties omitted the

2    receivables owed by WE. Morabito had the opportunity to discover the omission during the State

3    Court Action.  When the Court reads the April 17 Letter, it is very detailed as to what is being

4    asked for.  And when ~~you read~~the Court reads the April 23 Response from the IA, the IA asked

5    Debtors to identify any other witnesses and to produce all other documents relevant to their

6    claim that the accounts payable for BHI included the accounts payable of other entities as well as

7    the relevant contact information for those entities.  In sum, the IA wanted to make sure that it

8    was only BHI's obligations and assets were listed on its financial statements.

9        43.    ~~49.~~ The IA also agreed that the State Court order which appointed him~~,~~ obligated

10   him to undertake a reasonable factual investigation and requested that the parties promptly

11   provide him any other specific suggestions about what and whom he should investigate.

12       44.    ~~50.~~ The IA also suggested that the parties would have ample opportunity to

13   respond to and challenge his recommendations.

14       45.    ~~51.~~ In fact, Debtors challenged the IA's report, appealed the Court's acceptance

15   of the report, and ultimately dismissed the appeal of the working capital determination.

16       46.    ~~52. To think that Debtors would overlook the issues raised in the Complaint~~

17   ~~during the State Court Action is very difficult for the Court to accept~~While whether or not the

18   financial statements included accounts payable owed by third parties was distinct from whether

19   the financial statements omitted accounts receivable owed by third parties to BHI, it is hard for

20   the Court to believe that the April 23 Response did not prompt Morabito to consider the

21   possibility of omitted receivables.  Morabito stated in the Morabito Declaration that he could not

22   understand the discrepancy.  ~~Yet, his~~His counsel wrote a very detailed letter on April 17 to the

23   IA and the IA responded on April 23 asking for any additional information on the subject.  It

24   ~~strikes the Court as~~is troublesome ~~to~~ the ~~insinuation~~Court that Morabito and his counsel ~~in the~~

25   ~~State Court Action did not go back and look at the issues, speak with Mr. Dwelle, or provide an~~

26   ~~affidavit or declaration at the time.~~did not consider at the time the possibility that receivables had

27   been omitted.

28

1    ~~53.    While the Debtors' counsel offered to provide a declaration or affidavit from Mr.~~
2    ~~Dwelle, no declaration or affidavit was ever provided.~~

3         ~~54.    The Motion was filed on December 28, 2016.~~

4         47.    ~~55.~~ The Motion was filed on December 28, 2016. The Motion requests that the
5    Court authorize Debtors and their counsel to prosecute the Complaint or force the Trustee to
6    ~~abandoned~~abandon the Claims against the Herbst Parties so the Debtors can prosecute the
7    Complaint~~. In the Motion, the Debtors admit that the causes of action set forth in the Complaint~~
8    ~~are property of the Debtors'~~ on behalf of the estates.

9         48.    ~~56.~~ Prior to filing the Complaint, Debtors did not provide any information to the
10    Trustee regarding the Claims and did not make a request or demand upon the Trustee to
11    prosecute the Claims.

12                              **CONCLUSIONS OF LAW**

13    **A.    Debtors' Request for Derivative Standing.**

14         49.    ~~57.~~ A trustee, including the debtor-in-possession, is both authorized and has the
15    duty to manage the property of the bankruptcy estate.  See Louisiana World Exposition v. Fed.
16    Ins. Co., 858 F.2d 233, 245 (5th Cir. 1988).   This includes collecting the property of the
17    bankruptcy estate to maximize its value.  See id. at 246.   The trustee is dutybound to assert
18    claims or causes of action on behalf of the bankruptcy estate if doing so will maximize the
19    estate's value.  See id.

20         50.    ~~58.~~ It is an exception to the general rule when a court allows anyone other than a
21    trustee or debtor-in-possession to bring an action that the trustee has the responsibility, and
22    perhaps the exclusive right, to bring.  As such, the burden is upon the party seeking to establish
23    the right to bring the action.

24         51.    ~~59.~~ "It is well settled that in appropriate situations the bankruptcy court may allow
25    a party other than the trustee or debtor-in-possession to pursue the estate's litigation."  See In re
26    Spaulding Composites Co., Inc., 207 B.R. 899, 903 (9th Cir. B.A.P. 1997) (citing Louisiana
27    World, 858 F.2d at 247–52 n. 19 (and cases cited therein)); see also In re Catwil Corp., 175 B.R.
28    362, 364 (Bankr. E.D. Cal. 1994) ("Although the Code does not contain a parallel section that

1  authorized a creditors' committee to initiate adversary proceedings, courts have held that

2  sections 1103(c)(5) and 1109(b) imply such a right.").

3      52.   60. A majority of the Federal circuit courts have held that derivative standing is

4  available in bankruptcy proceedings. The circuit courts have generally required that the court

5  must expressly authorize standing, and may do so only where the trustee or debtor-in-possession

6  is found to be unwilling or unable to assert the claims or causes of action on behalf of the estate,

7  and granting derivative standing to pursue the claims is likely to benefit the estate.

8      53.   61. Courts such as the Sixth Circuit in Canadian Pacific have recognized a test

9  loosely comprised of four prongs, providing that a party may have derivative standing to initiate

10  actions beneficial to the estate where: (1) a demand made upon trustee or debtor-in-possession to

11  act; (2) the demand is declined; (3) the claim is colorable and would benefit the estate based on a

12  cost-benefit analysis; and (4) inaction is an abuse of discretion.  See In Canadian Pacific Forest

13  Products, Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.) 66 F.3d 1436, 1438-46 (6th Cir.

14  1995).

15      54.   62. While other courts have undertaken distinct analyses, nominally identifying

16  different factors, the analyses consistently revolve around whether the trustee or

17  debtor-in-possession has unjustifiably refused to pursue a colorable claim that would benefit the

18  estate.  See, e.g., Unsecured Creditors Committee of Debtor STN Enterprises v. Noyes (In re

19  STN Enterprises), 779 F.2d 901 (2nd Cir. 1985) (court may approve committee's right to initiate

20  suit where unjustifiable failure to bring colorable avoidance action likely to benefit estate); In in

21  re McKeesport Steel Casting Co., 799 F.2d 91, 94 (3rd Cir. 1986); Louisiana World, 858 F.2d at

22  247, 252 (standing may be granted where (1) claim at issue colorable, (2) debtor-in-possession or

23  trustee has unjustifiably refused to pursue, and (3) committee pursues court approval); In In re

24  Perkins, 902 F.2d 1254, 1258 (7th Cir. 1990) (derivative standing is appropriate when three

25  elements are met: (1) the trustee unjustifiably refuses a demand to pursue the action, (2) the

26  creditor establishes a colorable claim or cause of action, and (3) the creditor seeks and obtains

27  leave from the bankruptcy court to prosecute the action for and in the name of the trustee).

28

55. 63. Within the Ninth Circuit, the Sixth Circuit's <u>Canadian Pacific</u> four-prong test was expressly acknowledged by the Montana Bankruptcy Court in <u>Yellowstone</u>, which found that, in determining whether to confer derivative standing, courts often consider whether: (1) a demand had been made upon the statutorily authorized party to take action; (2) the demand is declined; (3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court; and (4) the inaction is an abuse of discretion in light of the debtor-in-possession's duties in a Chapter 11 case. See <u>In re Yellowstone Mountain Club, LLC</u>, No. 08-61570-11, 2009 WL 982207, at *2 (Bankr. D. Mont. Jan. 16, 2009) (citing <u>In re Valley Park</u>, 217 B.R. 864, 866 (Bankr. D. Mont. 1998) and <u>Canadian Pacific</u>, 66 F.3d at 1436). See also <u>In re Alaska Fur Gallery, Inc.</u>, No. A09-00196-DMD, 2010 WL 7765571, at *1 (Bankr. D. Alaska May 21, 2010) (adopting <u>Canadian Pacific</u> analysis).

56. 64. The Court concludes that the bankruptcy court identified the correct standard in <u>Yellowstone</u>.

57. 65. Here, prior to filing the Complaint, Debtors provided no information to the Trustee with respect to the Claims and made no request or demand upon the Trustee to prosecute the Claims. Thus, the first and second requirements for derivative standing were not satisfied.

58. 66. However, a demand would have been futile, but not because the Herbst Parties voted for the Trustee and selected the Trustee. No party sought to replace the Trustee. No party has even raised any allegation that the Trustee has done anything inappropriate. That by itself would not have been a sufficient basis to find futility.

59. 67. A demand would have been futile because the Trustee represents that he does not have ~~an unlimited budget and, in fact, has stated that estate funds are limited.~~

~~68. Yet, even if a demand was made, it would not have been an abuse of discretion for the Trustee to decline to prosecute the Claims. According to the Trustee, he has determined that the Claims are not colorable based upon his review of the Complaint, the pleadings in the State Court Action, and the Herbst Parties' opposition to the Motion. The Court finds that the Trustee has made a credible case why he would not have brought the Claims, even if he had the financial ability to prosecute the Complaint.~~

1    ~~69.~~    the funds to prosecute the Claims, and further represents that if the Court

2    concludes that the Claims are colorable, the Court should authorize the Debtors to prosecute the

3    Claims on behalf of the estates.  Because the Trustee has acknowledged that he cannot prosecute

4    the Claims, it is not relevant that no demand was made and the Trustee did not consent.

5    60.    ~~70.~~The Court must make an independent determination as to whether any of the

6    Claims are colorable.  ~~The Court can consider the Trustee's colorable analysis as a factor in the~~

7    ~~Court's independent determination~~A claim is colorable if it could survive a motion to dismiss

8    under Rule 12(b)(6). Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy,

9    LLC), 527 B.R. 169, 173 (D. Del. 2015).

10    61.    The element of a claim for fraud on the court is conduct that prevents a real trial

11    upon the issues involved.  Murphy v. Murphy, 103 Nev. 185 (Nev. 1987).

12    62.    The elements of a claim relief pursuant to NRCP 60(b)(2) are (1) that the

13    evidence existed at the time of trial, (2) that it could not have been discovered in time for a new

14    trial motion despite due diligence, and (3) that the evidence is sufficiently significant that it is

15    likely to change the outcome of the case.  Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir.

16    1990).

17    63.    The elements of a claim for relief pursuant to NRCP 60(b)(3) are "that the verdict

18    was obtained through fraud, misrepresentation, or other misconduct and the conduct complained

19    of prevented the losing party from fully and fairly presenting the defense." Advanced Check

20    Cashing & Payday Loans v. State Dep't of Bus. & Indus., Fin. Institutions Div., 2014 Nev.

21    Unpub. LEXIS 2120 (Nev. 2014). The fraud need not be intentional; unintentional misconduct

22    will suffice.  Anderson v. Cryovac, Inc., 862 F.2d 910 (1st Cir. 1988). A confession of judgment

23    obtained by fraud is remediable under NRCP 60(b)(3). Coast to Coast Demolition & Crushing,

24    Inc. v. Real Equity Pursuit, LLC, 126 Nev. 97, 103-05 (Nev. 2010).

25    64.    In order to obtain relief based upon fraud on the court or pursuant to NRCP

26    60(b)(3), it is unnecessary for the party to allege and establish that the fraud or misrepresentation

27    altered the outcome of the trial.  Lonsdorf v. Seefeldt, 47 F.3d 893, 897 (7th Cir. 1995).

28

65.    If the claimant establishes entitlement to relief based upon fraud on the court or under Rule 60(b)(2) or (3), the underlying judgment is vacated and the case stands as if the judgment had never occurred in the first place. Ditto v. McCurdy, 510 F.3d 1070, 1077 (9th Cir. 2007); Maguire v. MTC Fin., Inc., 2013 Nev. Unpub. LEXIS 960 (Nev. 2013). The case remains open and the court has the power to enter a new judgment as appropriate under the applicable substantive law. Ditto v. McCurdy, 510 F.3d at 1077. A party that paid funds pursuant to a vacated judgment is entitled to restitution of all transfers of property pursuant to the vacated judgment. Levy v. Drew, 4 Cal. 2d 456 (Cal. 1935).

66.    ~~71.~~ In conjunction with the Court's independent analysis of whether the Claims are colorable, the Court must make the determination of whether the Claims are plausible. Undertaking that analysis requires that the Court rely upon the standard for FRCP 12 as provided in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

~~72.    "Fraud upon the court consists of, *inter alia*, 'such conduct as prevents a real trial upon the issues involved.'" Murphy v. Murphy, 103 Nev. 185, 186 (Nev. 1987).~~

~~73.    The elements of a claim for relief pursuant to FRCP 60(b)(2) are: (1) that the evidence existed at the time of trial; (2) that it could not have been discovered through due diligence; and (3) it is of such magnitude that production of it earlier would have been likely to change the disposition of the case. See Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir. 1990). See also Nelson v. Heer, 121 Nev. 832, 833, 122 P.3d 1252, 1253 (2005), *as modified* (Jan. 25, 2006) (recognizing that "federal decisions involving the Federal Rules of Civil Procedure provide persuasive authority when this court examines its rules").~~

~~74.    To prevail on a claim under FRCP 60(b)(3), "the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." De Saracho v. Custom Food Mach., Inc., 206 F.3d 874, 880 (9th Cir. 2000).~~

67. ~~75.~~ Under ~~Twombly and Iqbal~~those authorities, the presumption that the allegations be analyzed in the light most favorable to the pleader does not apply to legal conclusions pled as factual averments or the mere recitation of the elements of the cause of action.

~~76.   Paragraph 5 of the Complaint provides that the dispute concerning the working capital estimate was at the heart of the State Court Action.  This is not fact.  It is supposition and speculation.  It is untrue.  It is refuted by any reading of Judge Adams' FF&CL.  Judge Adams made several findings and conclusions regarding Morabito's lack of credibility, his failure and lack of intention to comply in any fashion with the CMA, his intentional false representations with respect to the CMA, and his lack of truth regarding the working capital and the value of BHI.~~

~~77.   The allegations in Paragraphs 6, 7, and 8 of the Complaint appear to mirror the assertions in the Morabito Declaration.~~

~~78.   Paragraphs 17 through 29 of the Complaint are simply an attempt to relitigate what either was or should have been litigated before Judge Adams in the State Court Action.~~

~~79.   Nothing in the Complaint indicates that the Herbst Parties made any active representations to the IA or anybody else in that respect.~~

~~80.   Even if the Court finds that the Claims are plausible, the Court must then consider whether the Claims are colorable.~~

~~81.   The issue of a colorable claim is important.  The requirement that the claim be a colorable claim subsumes the requirement that the claim be beneficial to the estate based upon a cost-benefit analysis.~~

68. ~~82.~~ Part of the colorable analysis requires the Court to determine whether there is a remedy with respect to the Claims that could plausibly benefit the estate.

~~83.   Here, the Claims are not colorable and could not plausibly benefit the estate.~~

~~84.   The Court finds it implausible that Morabito could not have discovered the "newly discovered evidence" through reasonable diligence.~~

85.    ~~There were also several bases for Judge Adams' decision, including: (i) Morabito's failure to even attempt comply with the CMA and his misrepresentations in the CMA; (ii) the cumulative testimony of all the other parties about how Morabito attempted to control the documents and financial analysis that was being done by Paula Meyer; and (iii) the testimony of Ms. Meyer, Stan Bernstein, and Karen Scarborough regarding Morabito's misrepresentations on a number of subjects.~~

69.    ~~86.~~ ~~Moreover, the working capital dispute was not the heart of Judge Adams' decision.~~ Judge Adams broke down his damages, which were support by Mr. Greene's Expert Report: (i) \$20 million for Morabito's ~~absolute~~ failure to comply with the terms of the CMA and misrepresentations in the CMA; and (ii) \$66 million for Morabito's ~~gross exaggeration of the earnings value of BHI, which total \$86 million~~misrepresentations regarding the working capital estimate.  The Confessed Judgment was for \$85 million.  ~~That would indicate to the Court that the working capital dispute was not at the heart of Judge Adams' decision.~~As such, it is plausible that a court would find that the assertions of fraud in the Complaint have nothing to do with the nearly \$20 million awarded as damages for Morabito's fraud with respect to the CMA.

87.    ~~As such, it is plausible that a court would find that the assertions of fraud in the Complaint have nothing to do with the nearly \$20 million awarded as damages for Morabito's fraud with respect to the CMA.~~

88.    ~~There is also little doubt that prosecuting the Complaint would be expensive and time-consuming.  Morabito has told the Court that he does not have financial resources such that he cannot fund prosecution of the Complaint.  Edward Bayuk may be able to loan Morabito the money, but the Court has no evidence of that.~~

89.    ~~It would also take years for the estate to be administered, before the proceeds are distributed in accordance with the Bankruptcy Code.~~

90.    ~~It is also not imminently clear as to what would be recovered for the estate because the State Court Judgment was vacated as a result of the Settlement Agreement, Morabito was granted a forbearance, the Confessed Judgment was filed and placed upon the judgment roll and nothing was done with it.~~

1      ~~91.~~    ~~As such, it is not plausible that prosecuting the Complaint would bring any~~

2   ~~benefit to the estate.~~

3      ~~92.~~    ~~The Debtors presented the Court with no evidence in support of the Motion.~~

4      ~~93.~~    ~~Debtors filed the Morabito Declaration in support of the Motion. However, the~~

5   ~~Morabito Declaration must be based upon Morabito's own personal knowledge and be~~

6   ~~admissible.~~

7      ~~94.~~    ~~The Morabito Declaration is clearly hearsay and is full of legal argument.~~

8      ~~95.~~    ~~What Morabito states in the Morabito Declaration is what somebody else told~~

9   ~~him, who is not a party. It is an out-of-court statement being offered for the truth of the matter~~

10  ~~asserted, which is hearsay, and there is no other evidentiary foundation submitted to the Court.~~

11     ~~96.~~    ~~The absence of an affidavit from Mr. Dwelle or Mr. Allen Breeze is also~~

12  ~~concerning.~~

13     ~~97.~~    ~~Morabito's lack of credibility runs through the Chapter 7 Case as it did in the~~

14  ~~State Court Action.~~

15     <u>70.</u>    <u>Accordingly, even assuming the court that hears the Claims grants relief, it is</u>

16  <u>plausible that the court will enter a new judgment in favor of the Herbsts for nearly $20 million.</u>

17  <u>While a new judgment in the amount of $20 million would reduce the liabilities of the estate by</u>

18  <u>almost $60 million, such a reduction would not provide a benefit to the estate for purposes of the</u>

19  <u>Canadian Pacific analysis.</u>

20     <u>71.</u>    ~~98.~~ Therefore, <u>while the Court assumes for the purposes of the Motion that the</u>

21  <u>allegations of fraud are true and Debtors could obtain relief for fraud on the court or under</u>

22  <u>NRCP 60(b),</u> there is not a sufficient evidentiary basis for the Court to be persuaded that ~~there is~~

23  ~~a plausible and colorable claim for relief in the Complaint~~<u>the likely relief granted would provide</u>

24  <u>a benefit to the estate</u>.

25     <u>72.</u>    ~~99.~~ Since the burden is upon Debtors as the moving party to show their

26  entitlement to the benefit of the exception to the rule, the Court finds that Debtors have not met

27  their evidentiary burden.

28

1    73.    ~~100.~~ Based upon the foregoing, Debtors' request that Debtors be granted

2    derivative standing to prosecute the Complaint is denied.

3    **B.    Debtors' Request for Abandonment.**

4    74.    ~~101.~~ With respect to a motion for abandonment under Section 554(b), "an order

5    compelling abandonment is the exception, not the rule."  See In re Viet Vu, 245 B.R. 644, 647

6    (9th Cir. B.A.P. 2000).

7    75.    ~~102.~~ "Abandonment should only be compelled in order to help the creditors by

8    assuring some benefit in the administration of each asset.... Absent an attempt by the trustee to

9    churn property worthless to the estate just to increase fees, abandonment should rarely be

10   ordered."  See id. (citing In re K.C. Mach. & Tool Co., 816 F.2d 238, 246 (6th Cir. 1987)).

11   76.    ~~103.~~ Abandonment under Section 554(c) requires that the property be scheduled

12   or otherwise disclosed and the case be closed.  See 11 U.S.C. § 554(c) ("[u]less the court orders

13   otherwise, any property scheduled under 521(1) of this title ... not otherwise administered at the

14   time of the closing of a case is abandoned to the debtor."); ~~In re Kreisel, 399 B.R. 679, 687 88~~

15   ~~(Bankr. C.D. Cal. 2008) (citing 11 U.S.C. § 554(c) (2008) (property subject to abandonment~~

16   ~~must be scheduled); Moreno v. Autozone, Inc., No. C05-04432MJJ, 2007 WL 1063433, at *3~~

17   ~~(N.D. Cal. Apr. 9, 2007) (holding that a debtor lacked standing to bring claims against her~~

18   ~~former employer because such claims were never scheduled and therefore could not be~~

19   ~~abandoned)).~~  .  However, the Debtors request abandonment pursuant to Section 554(b), and

20   property of the estate that is not scheduled can be abandoned pursuant to Section 554(b).

21   Seymour v. Bank of Am., N.A. (In re Seymour), 2013 Bankr. LEXIS 4656 *19 (BAP 9th Cir.

22   Apr. 23, 2013) ("unless and until a chapter 7 trustee abandons them, a debtor's unscheduled

23   claims continue to be property of the estate"), aff'd, Seymour v. Bank of Am. (In re Seymour),

24   601 Fed. Appx. 572 (9th Cir. 2015)

25   77.    ~~104.~~ When an objection is made, the burden of proof is upon the movant seeking

26   abandonment.  See 5 COLLIER ON BANKRUPTCY ¶ 554.02[4] (Alan N. Resnick & Henry J.

27   Sommer eds., 16th ed.) (citing In re Pilz Compact Disc., 229 B.R. 630 (Bankr. E.D. Pa. 1999)).

28

1    78.    ~~105.~~ Here, notwithstanding the Trustee has represented that he will not administer

2    the Claims and the Court finds that it is unlikely that prosecution of the Claims will benefit the

3    estate, the Court does not see any basis for abandonment of the Claims.  The Claims were not

4    scheduled.  Even when Morabito amended his schedules in December 2016, he did not disclose

5    the dispute.  Morabito did not disclose any of the conversations he had with Mr. Dwelle or

6    anybody else.

7    79.    ~~106.~~ Based upon the foregoing, the request for abandonment is denied.

8    **IT IS SO ORDERED.**

9

10   ~~PREPARED AND SUBMITTED BY:~~

11   ~~GARMAN TURNER GORDON LLP~~

12
13   ~~/s/ Mark M. Weisenmiller~~
     ~~GERALD M. GORDON, ESQ.~~
     ~~MARK M. WEISENMILLER, ESQ.~~
14   ~~650 White Drive. Ste. 100~~
     ~~Las Vegas, Nevada 89119~~
15   ~~Tel: (725) 777-3000~~
     ~~Fax: (725) 777-3112~~
16   ~~Attorneys for the Herbst Parties~~

17

18                     ~~LR 9021 CERTIFICATION~~

19       ~~In accordance with LR 9021, counsel submitting this document certifies that the order~~
20   ~~accurately reflects the court's ruling and that (check one):~~

21              ~~The court waived the requirement of approval under LR 9021(b)(1).~~

22              ~~No party appeared at the hearing or filed an objection to the motion.~~

23              ~~I have delivered a copy of this proposed order to all counsel who~~
             ~~appeared at the hearing, and any unrepresented parties who appeared at~~
24           ~~the hearing, and each has approved or disapproved the order, or failed to~~
             ~~respond, as indicated above.~~

25           ~~FRANK C. GILMORE, ESQ. and DAVID B. SHEMANO, ESQ. FOR~~
26   ~~PAUL A. MORABITO [DISAPPROVED]~~

27           ~~JOHN F. MURTHA, ESQ. AND SETH ADAMS, ESQ. FOR THE~~
28   ~~CHAPTER 7 TRUSTEE, WILLIAM LEONARD [APPROVED]~~

~~4846-3779-9747, v. 2~~

1

2

TREY A. MONSOUR, ESQ. FOR EDWARD BAYUK AND THE
JACKSON HOLE TRUST COMPANY **[DISAPPROVED]**

3

4

I certify that this is a case under Chapter 7 or 13, that I have served a
copy of this order with the motion pursuant to LR 9014(g), and that no
party has objection to the form or content of the order.

5

###

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Document comparison by Workshare Compare on Thursday, March 09, 2017
3:47:14 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://LA-DMS/LA/61301593/1 |
| Description | #61301593v1<LA> - Findings and conclusions motion prosecute claims Herbst lodged version Mar 6 17 |
| Document 2 ID | interwovenSite://LA-DMS/LA/61297393/2 |
| Description | #61297393v2<LA> - Findings and conclusions motion prosecute claims Feb 27 17 |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 73 |
| Deletions | 227 |
| Moved from | 14 |
| Moved to | 14 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 328 |

**CERTIFICATE OF SERVICE**

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of ROBISON, BELAUSTEGUI, SHARP & LOW, that I am over the age of 18 and not a party to the above-referenced case, and that on the date below I caused to be served a true copy of the **OPPOSITION OF DEBTORS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED BY THE HERBST PARTIES** on all parties to this action by the method(s) indicated below:

    X    I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court by using the ECF system which served the following parties electronically:

Gabrielle A. Hamm
bknotices@gordonsilver.com;
bankruptcynotices@gordonsilver.com
Brian R. Irvine
birvine@gordonsilver.com,
sglantz@gordonsilver.com

*Attorney for* Creditor Berry-Hinckley Industries,
Creditor JH, Inc., Creditor Jerry Herbst

Gerald M. Gordon
ggordon@gtg.legal
Teresa M. Pilatowicz
tpilatowicz@gtg.legal
Mark M. Weisenmiller
mweisenmiller@gtg.legal

*Attorney for* Creditor Berry-Hinckley Industries,
Creditor JH, Inc., Creditor Jerry Herbst

Jeffrey L. Hartman
notices@bankrutpcyreno.com,
sji@bankruptcy.com

**U.S. TRUSTEE - RN – 11**
USTPRegion17.RE.ECF@usdoj.gov
*U.S. Trustee*

_____by placing an original or true copy thereof in a sealed envelope, with sufficient postage affixed thereto, in the United States mail at Reno, Nevada, addressed to:

DATED: This 9th day of March, 2017.

*Mary Carroll Davis*