GARMAN TURNER GORDON LLP
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail:  ggordon@gtg.legal
MARK M. WEISENMILLER, ESQ.
Nevada Bar No. 12128
E-mail:  mweisenmiller@gtg.legal
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
Telephone 725-777-3000
Facsimile 725-777-3112
*Attorneys for the Herbst Parties*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA**

| In re:<br><br>CONSOLIDATED NEVADA CORPORATION,<br><br>Debtor. | Case No.: BK-S-13-51236-GWZ<br>Chapter:  7<br><br>Hearing:<br>Date:  N/A<br>Time: N/A |
|---|---|

**RESPONSE TO OPPOSITION OF DEBTORS TO PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW SUBMITTED BY THE HERBST PARTIES**

JH, Inc. ("JH"), Jerry Herbst ("Herbst"), and Berry-Hinckley Industries ("BHI" and collectively with JH and Herbst, the "Herbst Parties"), by and through their counsel, the law firm of Garman Turner Gordon LLP, hereby submit this response to the *Opposition of Debtors to Proposed Findings of Fact and Conclusions of Law Submitted by the Herbst Parties* [ECF No. 142] (the "Opposition"), filed by Paul A. Morabito ("Morabito") and Consolidated Nevada Corporation ("CNC," and together with Morabito, the "Debtors") on March 9, 2017.

This Response is made and based upon the memorandum of points and authorities set forth below, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested under Federal Rule of Evidence 201, and any further argument of counsel entertained by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**I.**
**LEGAL ARGUMENT**

The Debtors object to Paragraphs 7, 16, 18, 19-20, 35, 39, 41, 44, 46, 47, 48-53, 55, 68, 72-74, 76-79, 84, 85-86, 88-89, 92, 94-95, 96, 97, 98, 103, and 105 of the *Findings of Fact and*

4850-9782-4837, v. 1

*Conclusions of Law in Support of the Order Denying Motion for Authority to File and Prosecute Claims on Behalf of Bankruptcy Estate or, in the Alternative, to Compel Abandonment of Claims* ("Herbst FF&CL") uploaded by the Herbst Parties on March 6, 2017. The Herbst Parties will address each of the Debtors' objections below.

**Paragraph 7.** Debtors object to Paragraph 7, which provides:

> 7. On April 17, 2009, Debtors' counsel in the State Court Action, Leif Reid, transmitted a letter to the Independent Accountant (the "IA") appointed by the State Court, which raised issues that Debtors had with the accounts payable detail that the Herbst Parties' included in their working capital report as of July 2, 2007, specifically with respect to liabilities and assets that Debtors contended should have been associated with Nella Oil/Western Energetix ("WE"), not BHI (the "April 17 Letter").

Debtors object to Paragraph 7 on the basis that "[t]he finding is intended to create the impression that the April 17 letter was very general and addressed all aspects of the BHI/WE relationship. That is not true and the Court found to the contrary." Opposition at 2. Although the Herbst Parties concede that not every issue raised by Morabito in the Complaint was specifically raised in the April 17 Letter and the Herbst Parties specifically included the Court's finding that the WE sale transaction and how the ongoing business relationship between WE and BHI should have been calculated are "two separate things" [see Paragraph 47 of Herbst FF&CL], there is no doubt that the April 7 Letter was general and demanded that the IA investigate several aspects of the BHI/WE relationship, including assets and liabilities that Debtors believed should not be included, and addressed various aspects of the IA's investigation that Debtors did not believe complied with the SPA.

In the April 17 Letter, Debtors' counsel did suggest that the SPA governed not just which liabilities could be included on the Herbst Parties' report, but also assets. See ECF No. 774-1 at 3. The April 7 Letter also provided that, "by simply accepting the assets and liabilities included on the Report as correct under the SPA, some of which the Defendants have previously concluded should not be included, the Independent Accounts' determination of the working capital will be incorrect." See id. In fact, several paragraphs in the April 7 Letter addressed the assets that were to be excluded. See id. at 4. Thus, the April 17 Letter was general and,

4850-9782-4837, v. 1

while it specifically addressed the issues regarding whether the Herbst Parties' working capital report erroneously included liabilities owed by WE to third parties, the April 17 Letter also made specific demand that the SPA be complied with respect to every aspect of the WE/BHI transaction. Thus, Paragraph 7 accurately represents the April 17 Letter and Paragraph 47 makes clear that the Court did not believe that the WE/BHI sale transaction and how the ongoing business relationship between WE and BHI should have been calculated, in other words, for reimbursement or setoff purposes, was distinct.

**Paragraph 16.** Debtors object to Paragraph 16, which provides**:**

> 16. One excerpt of the Expert Report (pages 20 and 21) further substantiates that the WE transaction with BHI was fully explored and investigated. A second excerpt from the Expert Report (pages 81 and 82) illustrates that the WE transaction actually harmed BHI because of the losses inherent in the undisclosed agreement regarding the cost of fuel. Finally, another excerpt from the Expert Report (Exhibit 16) evidences the third component of damages, $66,002,205.75, awarded by the State Court in the Judgment as more particularly described below.

Debtors object to Paragraph 16, arguing that "[a] review of the hearing transcript reveals that the Court never made any reference, let alone a finding, regarding the Expert Report. Further, the Expert Report does not in any way 'substantiate' that whether or not the Herbsts fraudulently omitted several million dollars of receivables from the working capital report was 'fully explored and investigated.'" Opposition at 3. However, the Expert Report by Mr. Green was discussed and relied upon by the Court at the Hearing. See Hearing Transcript at 94:21-7:95 ("And thus it was reasonable in Mr. Green's suggestion to extrapolate from performance to the truthfulness or untruthfulness of the representation concerning the value of BHI. The Court ultimately found defendants were fraudulently induced and awards damages to defendant and against plaintiffs in the amount of $66,002,205.75. And when you take that, you add it to the 19, you get to the 85. That's what the 66 -- and we also attach to Mr. Irvine's declaration is Mr. Green's calculation of $66,002,205, and a little slightly difference in cents, but it's like 20 or 30 cents difference, and that's where he took it from.").

Considering that the Court did find that the WE/BHI sale transaction and how the ongoing business relationship between WE and BHI should have been calculated was distinct,

3

which is accurately reflected in Paragraph 47, the Herbst Parties suggest that Paragraph 16 be revised to provide the following:

> 16. One excerpt of the Expert Report (pages 20 and 21) further substantiates that the WE transaction with BHI was fully explored and investigated *or should have been fully explored or investigated in the State Court Action*. A second excerpt from the Expert Report (pages 81 and 82) illustrates that the WE transaction actually harmed BHI because of the losses inherent in the undisclosed agreement regarding the cost of fuel. Finally, another excerpt from the Expert Report (Exhibit 16) evidences the third component of damages, $66,002,205.75, awarded by the State Court in the Judgment as more particularly described below.

**Paragraph 18.**  Debtors object to Paragraph 18, which provides:

> 18. On October 12, 2010, the State Court entered findings of fact and conclusions of law (the "FF&CL") in the State Court Action, which specifically set forth the legal and factual basis for judgment against Morabito for fraud in the inducement. The State Court concluded that Morabito and CNC defrauded the Herbst Parties in three (3) specific ways and awarded damages for two components, which totaled $85,871,363.75.

Debtors object to Paragraph 18, stating that "[a] finding that the Debtors defrauded the Herbst in 'three (3) specific ways' is not true." Opposition at 3. However, Paragraph 19 is an accurate reflection of the Court's ruling at the Hearing. See Hearing Transcript at 100:21-7:101 ("But he did break down his damages, and it was somewhat supported because I did read Mr. Green's report that's attached as an exhibit, that when he broke those down, as he indicated, nearly $20 million by Mr. Morabito's absolute failure to comply with the terms of the CMA, the construction and management agreement, and also with the gross exaggeration of the earnings value of BHI, as he set forth in paragraph 106 of his findings, and that was another 66 million. You add those up, you've got 86 million."). Furthermore, Paragraph 18 is an accurate reflection of the State Court's FF&CL, which was cited by the Herbst Parties and referenced and relied upon by the Court at the Hearing. The State Court found that Debtors defrauded the Herbst Parties with respect to: (i) working capital [see ECF No. 774-8 at 7-10, 13-15]; (ii) the CMA [see id. at 4-7, 11]; and (iii) the gross exaggeration of the earnings value of BHI [see id. at 15].

**Paragraphs 19-20.**  Debtors object to Paragraphs 19-20, which recites several provisions of the State Court's FF&CL that were cited in the Herbst Parties' opposition. Debtors object to

4

inclusion of these provisions, arguing that "[t]he State Court findings and conclusions speak for themselves, and this Court certainly did not read into the record as part of its ruling a selective couple dozen provisions of the State Court findings and conclusions." Opposition at 3. The Court should reject Debtors' objection to Paragraphs 19-20 because the State Court's FF&CL were material to the Court's decision at the Hearing and were *a* basis of the Herbst Parties' opposition to the Motion. See Hearing Transcript at 51:24-25 ("I have read those findings and conclusions numerous times."); 66:18-20 ("And the trial court would probably look at the findings of fact and conclusion of law of Judge Adams, not they're binding, but just to see what Judge Adams found."); 113-17-23 ("And it is refuted in my finding by any reading of Judge Adams's findings and conclusions where he made a number of findings and conclusions regarding Mr. Morabito's lack of credibility, his failure to even comply in any fashion with the construction management agreement, with his lack of truth regarding the working capital, about the value of BHI. I've already placed those findings on the record.").

**Paragraph 35.** Debtors object to Paragraph 35, which provides that "[t]he time to appeal the Confessed Judgment has expired." Debtors object to Paragraph 35 because the Court did not make any such finding. See Opposition at 4. Paragraph 35 was appropriately included because this statement was asserted by the Herbst Parties in their opposition, Debtors did not contest the statement, and the time to appeal the Confessed Judgment expired during suspension of the Chapter 7 Case. See Nevada Rule of Appellate Procedure 4 (30 days from entry of judgment).

**Paragraph 39.** Debtors object to Paragraph 39, which provides that "However, Morabito acknowledges that he knew of the basis of the fraud claims against the Herbst Parties prior to the continued 341 meeting." Morabito complains that:

> [t]he Court made no such finding and the finding is false. The 341(a) transcript reflects that Morabito was unwilling to testify at the 341(a) meeting regarding the fraud claims because the facts were still being developed, and Morabito testified, unrebutted, that he was unaware of the claims until December 2016.

Opposition at 4. However, Morabito acknowledged in that he first learned of the basis to challenge the Herbst Parties' claim through communications in September-October 2016, prior

5

to the 341 meeting. See ECF No. 733 (the "Complaint") at 25:27-28 ("It was only through Plaintiffs' communications with management for Western Energetix, LLC in September and October 2016 that Plaintiffs could have discovered and revealed Defendants financial manipulations. These communications caused Plaintiffs to scrutinize representations and statements Defendants had made and resulted in the discovery of the fraudulent representations and false statements that ultimately induced the dispute, the State Court Action, the Settlement Agreement, and the Confession of Judgment."). Moreover, the Court specifically found that Morabito stated at the 341 meeting that he could "potentially" object to the Herbst Parties' claim and the Court stated:

> THE COURT: And what was the potential based upon? Discussions that started on a Facebook inquiry in September 2016, and a conversation with Mr. Dwelle that is not privileged, and he did not reveal, and he was asked.

Hearing Transcript at 105:18-106:4. Thus, the record and the Court's statements at the Hearing demonstrate that Morabito knew of the basis of the fraud claims against the Herbst Parties prior to the 341 meeting, but chose not to provide any information to the Chapter 7 Trustee.

**Paragraph 41.** Debtors object to Paragraph 41, which provides:

> 41. Even though Morabito knew of the factual basis of his alleged Claims in 2008-09, raised them with the IA, and appealed the Working Capital Order to the Nevada Supreme Court, Morabito did not raise them during the Adversary Proceeding or in his opposition to the Herbst Parties' Motion for Partial Summary Judgment [ECF No. 33 in 15-05019-GWZ]. See ECF Nos. 7, 10, 42-46, 53, 55, 66, 73, 76 in 15-05019-GWZ.

Debtors object to Paragraph 41 on the basis that "[t]he finding is completely false and the Court never made such a finding." Opposition at 4. While the Herbst Parties believe sufficient evidence has been presented to demonstrate that Morabito knew of the factual basis of his alleged Claims in 2008, based upon the Court's findings that the WE sale transaction and how the ongoing business relationship between WE and BHI should have been calculated are "two separate things," the Herbst Parties suggest that Paragraph 41 be revised to provide:

> 41. Even though Morabito knew *or should have known* of the factual basis of his alleged Claims in 2008-09, raised them *or should have raised them* with the IA, and appealed the Working Capital Order to the Nevada Supreme Court, Morabito did not raise them during the Adversary Proceeding or in his opposition to the

6

Herbst Parties' Motion for Partial Summary Judgment [ECF No. 33 in 15-05019-GWZ]. See ECF Nos. 7, 10, 42-46, 53, 55, 66, 73, 76 in 15-05019-GWZ.

**Paragraph 44.**  Debtors object to Paragraph 44, which provides:

> 44. The Complaint seeks to attack, set aside, and vitiate a judgment that no longer exists. The State Court Judgment was vacated.

Debtors argue that this finding is unnecessary and misleading.  See Opposition at 4.  The Court stated at the Hearing that the Complaint seeks "to attached, set aside, vitate a judgment that no longer exists."  Hearing Transcript at 51:1-4.  Thus, inclusion of Paragraph 44 is appropriate.

**Paragraph 46.**  Debtors object to Paragraph 46, which provides:

> 46. More specifically, Debtors allege that the Herbst Parties defrauded the Debtors, the IA, and the State Court because they included assets and liabilities of WE on BHI's financial statements and their working capital estimate.

Debtors claim in the Opposition that, "[t]his is false and the Court explicitly found to the contrary. The Herbst fraud was omitting from the financial statement and working capital report millions of dollars of receivables owed by WE to BHI, and has nothing to do with the erroneous inclusion of WE liabilities owed to third parties on the BHI financial statements." Opposition at 4-5.  The Court should overrule Debtors' objection to Paragraph 46 because it is not consistent with the Complaint, which addressed a myriad of issues relating to the working capital dispute.

**Paragraph 47.**  Debtors object to Paragraph 47, which provides:

> 47. The sale of the predecessor of WE appeared to be a subject that was discussed during the State Court Action to ensure that BHI's financials did not contain financial information that should not be there because of the WE sale transaction as opposed to how the ongoing business relationship between WE and BHI should have been calculated, in other words, for reimbursement or setoff purposes, which had nothing to do with the sales transaction itself. They are two separate things.

Debtors complain that Paragraph 47 acknowledges that the Court "distinguished the issues relating to the sale of certain assets to WE, which were investigated during the State Court Action, from the receivables owed by WE to BHI, which was not investigated, but the proposed language is intentionally so vague and ambiguous as to be almost meaningless." Opposition at 5. The Court is certainly free to change the language used to describe the Court's findings in this regard, however, the language is a recitation of the Court's statement at the Hearing and

7

accurately reflects to the Court's ruling. <u>See</u> Hearing Transcript at 55:11- ("The sale of the predecessor of Western Energetix appeared to be a subject that was discussed to make sure that the BHI, Berry-Hinckley, Inc., financials did not contain financial information that shouldn't be there because of that transaction as opposed to how the ongoing business relationship between Western Energetix and BHI should have been calculated, in other words, for reimbursement or setoff purposes, which had nothing to do with the sales transaction itself. I think they are two separate things.").

**Paragraphs 48-53.** Debtors object to Paragraphs 48-53, which provide:

> 48. But it is evident that Debtors' counsel was extraordinarily thorough and diligent. When you read the April 17 Letter, it is very detailed as to what is being asked for. And when you read the April 23 Response from the IA, the IA asked Debtors to identify any other witnesses and to produce all other documents relevant to their claim that the accounts payable for BHI included the accounts payable of other entities as well as the relevant contact information for those entities. In sum, the IA wanted to make sure that it was only BHI's obligations and assets were listed on its financial statements.
>
> 49. The IA also agreed that the State Court order which appointed him obligated him to undertake a reasonable factual investigation and requested that the parties promptly provide him any other specific suggestions about what and whom he should investigate.
>
> 50. The IA also suggested that the parties would have ample opportunity to respond to and challenge his recommendations.
>
> 51. In fact, Debtors challenged the IA's report, appealed the Court's acceptance of the report, and ultimately dismissed the appeal of the working capital determination.
>
> 52. To think that Debtors would overlook the issues raised in the Complaint during the State Court Action is very difficult for the Court to accept. Morabito stated in the Morabito Declaration that he could not understand the discrepancy. Yet, his counsel wrote a very detailed letter on April 17 to the IA and the IA responded on April 23 asking for any additional information on the subject. It strikes the Court as troublesome the insinuation that Morabito and his counsel in the State Court Action did not go back and look at the issues, speak with Mr. Dwelle, or provide an affidavit or declaration at the time.
>
> 53. While the Debtors' counsel offered to provide a declaration or affidavit from Mr. Dwelle, no declaration or affidavit was ever provided.

Debtors complain of Paragraphs 48-53, not because the findings do not accurately reflect to

8

Court's findings at the Hearing, but because "the Court did not bas[e] its ruling on those difficulties, and any ruling based on the difficulties would be clear error…." See Opposition at 5. An assertion that the Court erred in rendering these findings is misplaced and premature and is not a basis for objecting to these findings.

These findings were made by the Court during the Hearing and are appropriately included in the Herbst Parties FF&CL. See Hearing Transcript at 56:5-6 ("But it is, I think, fairly evident to me that Mr. Morabito's counsel was extraordinarily thorough and diligent."); 57:13-18 (Then, the independent accountant goes further. The accountant agrees that the order obligates him to undertake a reasonable factual investigation. If the parties have any other specific suggestions about what and whom the accountant should investigate, he requests that the parties promptly provide him with this information."); 57:22-24 ("[T]he parties will have ample opportunity to respond and challenge the recommendations, et cetera."); 87:10-17 ("The debtor had every opportunity to participate in the independent accountant's analysis. They took opportunities. Maybe they didn't take every opportunity they should have, but they took every opportunity to participate, as evidenced by Mr. Reed's letter. They challenged the independent accountant's report, and they appealed the court's acceptance to the Nevada Supreme Court, and ultimately dismissed that."): 61:2-5 ("But to think that Mr. Morabito, based on everything that I've seen in this case since 2013, would overlook that makes it very difficult for me to accept."); 80:18-3:81 ("The basis of what troubles me is he said in his declaration that he couldn't understand the discrepancy, he searched, he couldn't do it. Yet, Mr. Reed wrote a very detailed letter on April 17th. There was a response on April 23rd where the independent accountant is asking for any information on any subject. You know, this is a million dollar -- millions-of-dollar discrepancy in caps. It -- I mean, didn't go back and look at? I mean, it was there then, and it probably would have been fresher then. Why didn't they talk to Mr. Dwelle? Why didn't they get his – that's the troublesome part for me."); 58:1-11 (Morabito's counsel said they would be glad to provide a declaration or affidavit from Mr. Dwelle, but not affidavit was every provided).

**Paragraph 55.**  Debtors object to Paragraph 55, which provides:

55. The Motion requests that the Court authorize Debtors and their counsel to

9

> prosecute the Complaint or force the Trustee to abandoned the Claims against the Herbst Parties so the Debtors can prosecute the Complaint. In the Motion, the Debtors admit that the causes of action set forth in the Complaint are property of the Debtors' estates.

Debtors object to Paragraph 55, arguing that, although Debtors' admitted that the claims for recovery on damages and for fraudulent transfers are estate property, "the Debtors specifically stated they had independent standing to assert fraud on the court." See Opposition at 5.

Debtors statement is not entirely accurate as Debtors wrote in the motion that "[t]he Damages and Fraudulent Transfer Claims belong to the estate and the Trustee has exclusive authority and standing to prosecute the Claims." See ECF No. 741 at 9. In the motion, Debtors also suggested that they had independent staring to assert their declaratory relief claim. See id. Yet, that is not accurate because the declaratory relief claim is tied to the fraud claims and not an independent claim for which the Debtors have standing to pursue. See KAL-MOR-USA, LLC v. Branch Banking and Trust Co., 2015 WL 5775356 (D. Nev. 2015) (declaratory relief is not a claim but is a form of relief); Dela Cruz v. HSBC Bank USA, N.A., 2012 WL 3536793 (D. Nev. 2012) ("Declaratory relief is not a separate cause of action, but dependent on the merits of Plaintiff's substantive claims…"); Tyler v. American Home Mortgage, 2011 WL 5025234 (D. Nev. 2011) (injunctive and declaratory relief are remedies, not independent causes of action. Both of these claims are derivative of other substantive claims). Thus, Paragraph 55 is appropriate.

**Paragraph 68.** Debtors object to Paragraph 68, which provides:

> 68. Yet, even if a demand was made, it would not have been an abuse of discretion for the Trustee to decline to prosecute the Claims. According to the Trustee, he has determined that the Claims are not colorable based upon his review of the Complaint, the pleadings in the State Court Action, and the Herbst Parties' opposition to the Motion. The Court finds that the Trustee has made a credible case why he would not have brought the Claims, even if he had the financial ability to prosecute the Complaint.

Debtors argue in the Opposition that "[t]o the extent the Court made this finding, which is unclear, it should not be included because it is unnecessary dicta. … The Court should limit the findings and conclusions to the Trustee's representation that he would not prosecute the claims,

10

even if meritorious, because of lack of funds." Opposition at 6.

The Court should overrule the Opposition in this regard because the Court did in fact explicitly make this finding on the record and stated that the Trustee represented that he did not have funds to prosecute the Claims adequately and, even if he did, he does not believe there is a colorable claim. See Hearing Transcript at 60:1-4 ("So even if the trustee had sufficient funds in the estate to prosecute this matter if he had been asked to, my tentative conclusion is it probably would not have been unreasonable to decline to do so."); 55:12-15 ("Clearly, the trustee here has made a couple points. One, he doesn't have the money to prosecute it adequately, that even if he did have the money, he doesn't think there's a colorable claim."). Thus, Paragraph 68 is an accurately reflection of the Court's ruling and is appropriate included in the Herbst Parties' FF&CL.

**Paragraphs 72-74.** Debtors object to Paragraphs 72-74, which provide:

72. "Fraud upon the court consists of, inter alia, 'such conduct as prevents a real trial upon the issues involved.'" Murphy v. Murphy, 103 Nev. 185, 186 (Nev. 1987).

73. The elements of a claim for relief pursuant to FRCP 60(b)(2) are: (1) that the evidence existed at the time of trial; (2) that it could not have been discovered through due diligence; and (3) it is of such magnitude that production of it earlier would have been likely to change the disposition of the case. See Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir. 1990). See also Nelson v. Heer, 121 Nev. 832, 833, 122 P.3d 1252, 1253 (2005), as modified (Jan. 25, 2006) (recognizing that "federal decisions involving the Federal Rules of Civil Procedure provide persuasive authority when this court examines its rules").

74. To prevail on a claim under FRCP 60(b)(3), "the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." De Saracho v. Custom Food Mach., Inc., 206 F.3d 874, 880 (9th Cir. 2000).

Debtors object to Paragraphs 72-74 because the Herbst Parties "description omits certain key cases and legal principals. Opposition at 6. While the Herbst Parties included some of the legal authorities Morabito asked to be included in the Herbst Parties FF&CL, the Herbst Parties did not include the legal authorities set forth in the Opposition because: (i) the Court did not refer or rely upon them during the Hearing; and/or (ii) the legal authorities are not binding upon this

11

4850-9782-4837, v. 1

Court. Thus, the Court should overrule Debtors' Opposition in this regard.

**Paragraphs 76-79.** Debtors object to Paragraph 76-79, which provide:

76. Paragraph 5 of the Complaint provides that the dispute concerning the working capital estimate was at the heart of the State Court Action. This is not fact. It is supposition and speculation. It is untrue. It is refuted by any reading of Judge Adams' FF&CL. Judge Adams made several findings and conclusions regarding Morabito's lack of credibility, his failure and lack of intention to comply in any fashion with the CMA, his intentional false representations with respect to the CMA, and his lack of truth regarding the working capital and the value of BHI.

77. The allegations in Paragraphs 6, 7, and 8 of the Complaint appear to mirror the assertions in the Morabito Declaration.

78. Paragraphs 17 through 29 of the Complaint are simply an attempt to relitigate what either was or should have been litigated before Judge Adams in the State Court Action.

79. Nothing in the Complaint indicates that the Herbst Parties made any active representations to the IA or anybody else in that respect.

Debtors object to Paragraphs 76-79 because "[t]he characterization is unnecessary, especially because the Complaint had to be filed prematurely prior to the expiration of the extended statute of limitations. Opposition at 7. The Court should overrule Debtors' Opposition in this regard because Paragraphs 76-79 are an accurate reflection of the Court's statements at the Hearing. See Hearing Transcript at 113:11-14-15:114 ("One, one thing that is not a factual pleading is in paragraph 5 where it is alleged that the heart of the state court action was a dispute concerning a working capital estimate. That is untrue. That -- not a fact. That's an opinion. And it is refuted in my finding by any reading of Judge Adams's findings and conclusions where he made a number of findings and conclusions regarding Mr. Morabito's lack of credibility, his failure to even comply in any fashion with the construction management agreement, with his lack of truth regarding the working capital, about the value of BHI. … So to say it was the heart is simply supposition, speculation, and I don't think it's accurate."); 114:16-25 ("The rest of the allegations in paragraph 6, 7, 8 of the complaint that was filed in state court on December 16th, 2016, appears to me to mirror the assertions in Mr. Morabito's declaration that was filed in support of this motion. And he goes through the basis, the factual allegation, and then he goes back to a

12

deposition of the eldest Herbst son, which has nothing to do with the matter. Those matters, it appears to me in paragraphs 17 to 29, are simply an attempt to re-litigate what either was or should have been litigated before Judge Adams."); 116-5-7 ("And nothing in this complaint indicates, so far as I can determine, that Herbst made any active representations to the accountant or anybody else in that respect.").

**Paragraph 84.**  Debtors object to Paragraph 84, which provides that "[t]he Court finds it implausible that Morabito could not have discovered the 'newly discovered evidence' through reasonable diligence."  Debtors object to Paragraph 84 on the basis that "[t]he Court made no such finding, not could it at the hearing."  Opposition at 7.  The Court should overrule this objection because the Court did in fact make this finding.  See Hearing Transcript at 120:16-20 ("As I understand the representations and argument, that the newly discovered evidence that Mr. Morabito says he's been able to develop could not have been discovered with reasonable diligence to move to a -- in time to move for a new trial. I find that implausible.").

**Paragraphs 85-86.**  Debtors object to Paragraph 85-86, which provide:

> 85. There were also several bases for Judge Adams' decision, including: (i) Morabito's failure to even attempt comply with the CMA and his misrepresentations in the CMA; (ii) the cumulative testimony of all the other parties about how Morabito attempted to control the documents and financial analysis that was being done by Paula Meyer; and (iii) the testimony of Ms. Meyer, Stan Bernstein, and Karen Scarborough regarding Morabito's misrepresentations on a number of subjects.
>
> 86. Moreover, the working capital dispute was not the heart of Judge Adams' decision. Judge Adams broke down his damages, which were support by Mr. Greene's Expert Report: (i) $20 million for Morabito's absolute failure to comply with the terms of the CMA and misrepresentations in the CMA; and (ii) $66 million for Morabito's gross exaggeration of the earnings value of BHI, which total $86 million. The Confessed Judgment was for $85 million. That would indicate to the Court that the working capital dispute was not at the heart of Judge Adams' decision.

Debtors object to Paragraphs 85-86 on grounds that Debtors' "version is neutral and accurately contains the Court's ultimate conclusion, which is that even if the State Court found that the Herbst had committed fraud regarding the working capital report, it is plausible that the State Court might still find that judgment should be awarded in favor of the Herbst in the amount of

$20 million based upon the CMA issue." Opposition at 7. The Court should overrule this objection because Paragraph 85 is an accurate reflection of the Court's ruling at the Hearing. See Hearing Transcript 60:11-16 ("And there were a number of bases for Judge Adams's decision. Mr. Morabito's failure to comply with the construction management agreement. The cumulative testimony to all the other parties about how he had attempted to control the documents and the financial analysis that was being done by Ms. Myer."); 101:14-17 ("That would indicate to me that it was not at the heart of it. What's at the heart of it was Mr. Morabito's misrepesentations on a number of subjects, as illustrated by a number of witnesses.").

Paragraph 86 is also accurate. See id. at 114:14-15 ("So to say it was the heart is simply supposition, speculation, and I don't think it's accurate."); 58:13-16 (It was one -- not the heart. I know Mr. Morabito says in his declaration that the heart of the decision -- he can't tell me what was at the heart of Judge Adams's decision."); 100:21-7:101 ("But he did break down his damages, and it was somewhat supported because I did read Mr. Green's report that's attached as an exhibit, that when he broke those down, as he indicated, nearly $20 million by Mr. Morabito's absolute failure to comply with the terms of the CMA, the construction and management agreement, and also with the gross exaggeration of the earnings value of BHI, as he set forth in paragraph 106 of his findings, and that was another 66 million. You add those up, you've got 86 million. Pretty close to the 85 million that was agreed to as a confession of judgment that could be satisfied by a $20 million value judgment, some cash, some in kind, for lack of a better word.").

**Paragraphs 88-89.** Debtors object to Paragraphs 88-89, which provide:

> 88. There is also little doubt that prosecuting the Complaint would be expensive and time-consuming. Morabito has told the Court that he does not have financial resources such that he cannot fund prosecution of the Complaint. Edward Bayuk may be able to loan Morabito the money, but the Court has no evidence of that.

> 89. It would also take years for the estate to be administered, before the proceeds are distributed in accordance with the Bankruptcy Code.

Debtors complain of Paragraphs 88-89 on grounds that these paragraphs "contain statements that are both false and irrelevant regarding the ability of the Debtors to prosecute the claims."

14

4850-9782-4837, v. 1

Opposition at 7-8. Again, the Court should overrule Debtors' objection in this regard because Paragraphs 88-89 are an accurate reflection of the Court's ruling at the Hearing. See Hearing Transcript at 59:17-18 ("there is little doubt in my mind it would be expensive, it would be time-consuming …."); 119:11-15 ("Mr. Morabito told me he doesn't have financial resources. I don't know how he's going to go forward with it. Mr. Bayuk may be able to loan him money, I don't know. But I don't have any evidence of that."); 54:6-8 ("And then, the estate gets administered, and proceeds are distributed in accordance with the Code. Life is simple. That will take years. Years.").

**Paragraph 92.** Debtors object to Paragraph 92, which provides that "[t]he Debtors presented the Court with no evidence in support of the Motion." Debtors object to Paragraph 92 because "[t]hat is false. Morabito submitted a declaration under penalty of perjury describing, in great detail, his recent discovery of the fraud and the details of the fraud." Opposition at 8. However, the Court should reject Debtors' assertion because Paragraph 92 is an accurate reflection of the Court's statements at the Hearing. See Hearing Transcript at 85:10-8:86 (after commenting that the Morabito Declaration was "clearly hearsay" and "full of argument" and that no declarations by Mr. Dwelle or Mr. Belize (sic) were submitted, the Court stated that "I have no evidence.").

**Paragraphs 94-95.** Debtors object to Paragraphs 94-95, which provides:

> 94. The Morabito Declaration is clearly hearsay and is full of legal argument.
>
> 95. What Morabito states in the Morabito Declaration is what somebody else told him, who is not a party. It is an out-of-court statement being offered for the truth of the matter asserted, which is hearsay, and there is no other evidentiary foundation submitted to the Court.

Debtors argue that this provision is "false." See Opposition at 8. As detailed in the Herbst Parties response to the objection to Paragraph 92, the Court clearly made these findings on the record of the Hearing and, as such, Debtors' objection is this regard should be overruled. See Hearing Transcript at 85:10-8:86.

**Paragraph 96.** Debtors object to Paragraph 96, which provides that "[t]he absence of an affidavit from Mr. Dwelle or Mr. Allen Breeze is also concerning." Debtors object to this

15

1 Paragraph on the basis that, "[a]s the hearing was not an evidentiary hearing to adjudicate disputed facts, it is unclear why the Court would be concerned that the Debtors did not submit declarations from Dwelle and Breeze as opposed to having Morabito testify, under penalty of perjury, what they told him." Opposition at 8. However, the Court should overrule Debtors' objection to Paragraph 96 because it is an accurate reflection of the Court's ruling at the Hearing. See Hearing Transcript at 85:18-25 ("And I think the absence of that affidavit from Mr. Dwelle, I think I already mentioned that, is of concern to me[,]" and then the Court comments on the lack of affidavit from Belize (sic)).

**Paragraph 97.** Debtors object to Paragraph 97, which provides that "Morabito's lack of credibility runs through the Chapter 7 Case as it did in the State Court Action." Debtors object to Paragraph 97 on the basis that, "[t]he conclusion, to the extent the Court actually made the conclusion, is irrelevant []" and suggests that if the Court were to make such a determination it would be reading "Rule 60(b)(3) and the fraud on the court doctrine out of existence." See Opposition at 8-9. The Court should overrule the Opposition to Paragraph 97 because the Court explicitly made the finding set forth in Paragraph 97 at the Hearing. See Hearing Transcript at 119:4-7 ("And Mr. Morabito's credibility runs throughout this case, as it did in the state court case. And it ties into a declaration filed that is, for the most part, supported by hearsay.").

**Paragraph 98.** Debtors object to Paragraph 98, which provides that "[t]herefore, there is not a sufficient evidentiary basis for the Court to be persuaded that there is a plausible and colorable claim for relief in the Complaint." Debtors object to Paragraph 98 on the basis that "[t]he characterization is so vague as to be meaningless, and fails to accurately characterize what the Court ultimately concluded — that even assuming the Debtors demonstrated that the Herbsts committed fraud, and even assuming the State Court vacated the Confessed Judgment, the Court speculated that it would be plausible that the State Court would enter a new judgment against the Debtors in the amount of $20 million." Opposition at 9. Yet, the Court should overrule Debtors' objection to Paragraph 98 because it is an accurate reflection of the Court's ruling at the Hearing. See Hearing Transcript at 122:2-8 ("I just don't think there's a sufficient evidentiary basis for me to be convinced or persuaded that there's a possible plausible claim for relief, a colorable claim,

for all the reasons I've placed on the record. And since the burden is upon the party seeking to get the exception to the rule, the trustee has to bring an action, I'm finding that burden has not been satisfied, and I am denying the motion.").

**Paragraph 103.**  Debtors object to Paragraph 103, which provides:

> 103. Abandonment under Section 554(c) requires that the property be scheduled or otherwise disclosed and the case be closed. See 11 U.S.C. § 554(c) ("[u]less the court orders otherwise, any property scheduled under 521(1) of this title ... not otherwise administered at the time of the closing of a case is abandoned to the debtor."); In re Kreisel, 399 B.R. 679, 687–88 (Bankr. C.D. Cal. 2008) (citing 11 U.S.C. § 554(c) (2008) (property subject to abandonment must be scheduled); Moreno v. Autozone, Inc., No. C05-04432MJJ, 2007 WL 1063433, at *3 (N.D. Cal. Apr. 9, 2007) (holding that a debtor lacked standing to bring claims against her former employer because such claims were never scheduled and therefore could not be abandoned)).

Debtors object to Paragraph 103 on grounds that "[i]n describing the law governing abandonment, the Herbsts discuss section 554(c) of the Bankruptcy Code, but the applicable section is 554(b), and unscheduled but identified property of the estate can be abandoned pursuant to section 554(b)." Opposition at 9.  The Court should overrule Debtors' objection to Paragraph 103.

As noted in the Herbst Parties opposition to the motion, the Debtors did not cite to either Section 554(c) or (b) in the motion, which is why the Herbst Parties argued that the motion should be denied because: (i) Debtors did not cite any legal authority to support their request for abandonment; (ii) abandonment was inappropriate under Section 554(b) because an order compelling abandonment is the exception not the rule; and (iii) abandonment should not be granted because Debtors failed to schedule and otherwise inform the Chapter 7 Trustee of the Claims.  See ECF No. 757 at 17-19.  Furthermore, the record at the Hearing evidences that the Court addressed the request for abandonment under both Section 554(b) and (c).  See Hearing Transcript at 61:12-18 ("[O]ne thing that will not happen today, I believe, is I do not see any basis for abandonment of this claim to the debtor. If I allow the debtor to bring, it'll be for the benefit of the estate. It will not be abandoned to him because abandonment to him means it's his asset. That will not happen, under either 554(b) or 554(c).").  Thus, Paragraph 103 is consistent

17

with the Court's ruling at the Hearing and should remain.

**Paragraph 105.**  Debtors object to Paragraph 105, which provides:

> 105. Here, the Court does not see any basis for abandonment of the Claims. The Claims were not scheduled. Even when Morabito amended his schedules in December 2016, he did not disclose the dispute. Morabito did not disclose any of the conversations he had with Mr. Dwelle or anybody else.

Debtors object to Paragraph 105 on grounds that Paragraph 105 does not reflect the Court's ruling.  See Opposition at 10.  Debtors' objection to Paragraph 105 should be overruled as Paragraph 105 accurately reflects to Court's decision denying abandonment at the Hearing.  See Hearing Transcript at 61:12-23 ("[O]ne thing that will not happen today, I believe, is I do not see any basis for abandonment of this claim to the debtor. … First of all, it wasn't even scheduled. Then, the schedules were amended, I think, December 1st of this year, and did not fully disclose the dispute. And then, at his continued 341 meeting of creditors, he did not disclose any of the conversations that he had with Mr. Dwelle or anybody else.").

## II.
## CONCLUSION

Based upon the forgoing, the Court should overrule the Opposition, enter the FF&CL and Order proposed by the Herbst Parties, and grant any further relief that is appropriate.

DATED this 15th day of March, 2017.

                                            GARMAN TURNER GORDON LLP

                                            */s/ Mark M. Weisenmiller*         .
                                            GERALD M. GORDON, ESQ.
                                            MARK M. WEISENMILLER, ESQ.
                                            *Attorneys for the Herbst Parties*

4850-9782-4837, v. 1